## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| MODEL REORG ACQUISITION, LLC, et al., | : | Case No. 17-11794 (___) |
|  | : |  |
| Debtors.[1] | : | (Joint Administration Pending) |
|  | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEBTORS' MOTION PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 365, 1125, 1126, 1128, AND 1129, BANKRUPTCY RULES 2002, 3017, 3018, AND 3020, AND LOCAL BANKRUPTCY RULE 3017-1 FOR ORDERS (I) APPROVING PROCEDURES FOR DETERMINING ADEQUACY OF DISCLOSURE STATEMENT AND CONSIDERING CONFIRMATION OF PLAN; (II)(A) APPROVING ADEQUACY OF DISCLOSURE STATEMENT AND (B) CONFIRMING PLAN OF REORGANIZATION; (III) AUTHORIZING ASSUMPTION OF THE NEWHOLDCO INVESTMENT AGREEMENT; AND (IV) GRANTING RELATED RELIEF**

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors" and, together with their non-Debtor affiliates, the "Company"), hereby move (the "Motion") this Court under sections 105, 365, 1125, 1126, 1128, and 1129 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 3017, 3018, and 3020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 3017-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules") (i) for entry of an order (the "Procedures Order")

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Perfumania Holdings, Inc. (7964); Perfumania, Inc. (6340); Magnifique Parfumes and Cosmetics, Inc. (6420); Ten Kesef II, Inc. (1253); Perfumania.com, Inc. (4688); Model Reorg Acquisition, LLC (0318); Northern Group, Inc. (3226); Perfumania Puerto Rico, Inc. (6787); Quality King Fragrance, Inc. (4939); Scents of Worth, Inc. (1732); Jacavi, LLC (6863); Distribution Concepts, LLC (8845); Flowing Velvet, Inc. (7294); Aladdin Fragrances, Inc. (4338); Niche Marketing Group, Inc. (1943); Northern Brands, Inc. (7186); Northern Amenities, Ltd. (5387); Global Duty Free Supply, Inc. (2686); and Perfumers Art, Inc. (6616). The address of the Debtors' corporate headquarters is 35 Sawgrass Drive, Suite 2, Bellport, New York 11713.

(a) scheduling a combined hearing on (x) the Debtors' Disclosure Statement for Prepackaged Plan of Reorganization, dated August 26, 2017 (the "Disclosure Statement") with respect to the *Prepackaged Joint Chapter 11 Plan of Reorganization of Model Reorg Acquisitions, LLC and Its Affiliated Debtors and Debtors In Possession*, dated August 26, 2017 (as may be amended, modified or supplemented from time to time, the "Plan") and (y) confirmation of the Plan, (b) approving the procedures for objecting to the adequacy of the Disclosure Statement and confirmation of the Plan, (c) approving the form and manner of notice of the combined hearing and commencement of these chapter 11 cases, and (d) scheduling a hearing on the order (the "Assumption Order") authorizing the Debtors to assume the Investment Agreement between NewHoldCo, each of the individual members of NewHoldCo, and Perfumania Holdings, Inc. (the "NewHoldCo Investment Agreement"); (ii) for entry of an order (the "Confirmation Order") (a) approving the adequacy of the Disclosure Statement and (b) confirming the Plan; and (iii) for entry of the Assumption Order.  In support of the Motion, the Debtors rely upon and incorporate by reference the Declaration of Michael W. Katz in Support of Chapter 11 Petitions and First Day Pleadings (the "First Day Declaration"), filed with the Court concurrently herewith.[2]  In further support of the Motion, the Debtors, by and through their undersigned counsel, respectfully represent:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

---

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First-Day Declaration, the Plan, or Disclosure Statement, as applicable.

2.      The legal predicates for the relief requested herein are Bankruptcy Code

sections 105, 365, 1125, 1126, 1128, and 1129, Bankruptcy Rules 2002, 3017, 3018, and 3020,

and Local Bankruptcy Rule 3017-1.

3.      Pursuant to Bankruptcy Rule 7008 and Local Bankruptcy Rule 9013-1(m),

the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is

determined that this Court would lack Article III jurisdiction to enter such final order or

judgment absent the consent of the parties.

## BACKGROUND

### A.      The Chapter 11 Cases

4.      On the date hereof (the "Petition Date"), the Debtors filed voluntary

petitions in this Court for relief under chapter 11 of the Bankruptcy Code (collectively, the

"Chapter 11 Cases").

5.      The Debtors continue to operate their businesses and manage their

properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code.  No creditors' committee has been appointed by the Office of the United

States Trustee for the District of Delaware (the "U.S. Trustee"), nor has a trustee or examiner

been appointed in the Chapter 11 Cases.

### B.      Background and Current Business Operations

6.      Perfumania is an independent, national, vertically integrated wholesale

distributor and specialty retailer of perfumes and fragrances.  The Company's wholesale business

distributes designer fragrances to mass market retailers, drug, and other chain stores, retail

wholesale clubs, traditional wholesalers, and other distributors throughout the United

States.   The Company's retail business is operated  through a chain of retail stores that specialize

in the sale of fragrances and related products at discounted prices up to 75% below the

3

manufacturers' suggested retail prices and a Company-owned website that offers a selection of the Company's more popular products for sale online.

7.     Contemporaneous with the commencement of the Chapter 11 Cases, the Debtors filed the Plan.  The Plan provides for a comprehensive reorganization of the Debtors that will allow the Company to close underperforming stores and reject unfavorable lease terms to establish a foundation for sustainable long-term growth and to improve the overall returns from the Company's retail footprint going forward.  All Allowed Claims are Unimpaired under the Plan, including the Debtors' general unsecured creditors, such as trade vendors, employees, and landlords.  Because there is no equity value in Perfumania Holdings to distribute to stockholders, holders of Interests in Perfumania Holdings are not receiving a recovery under the Plan.   The Debtors will not solicit votes on the acceptance or rejection of the Plan because all holders of Claims against, or Interests in, the Debtors hold either (i) an unclassified Claim, (ii) a Claim or Interest that is Unimpaired, and are therefore deemed to have accepted the Plan, or (iii) an Interest that does not entitle such holder to receive or retain any property under the Plan, and are therefore deemed to have rejected the Plan.

8.     Additional factual background regarding the Debtors, including their business operations, their capital structure, and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the First Day Declaration.

## C.     The Plan

9.     The Debtors' "pre-packaged" Plan provides for a comprehensive reorganization of the Debtors that will (i) leave all Allowed Claims Unimpaired, meaning all of the Debtors' creditors, such as trade vendors, employees, and landlords are Unimpaired under the plan; (ii) close underperforming stores and reject unfavorable lease terms to establish a

foundation for sustainable long-term growth and to improve the overall returns from the Company's retail footprint going forward, (iii) provide meaningful consideration to Perfumania's stockholders who opt-in to a Stockholder Release, (iv) issue 100% of the stock of Reorganized Perfumania to NewHoldCo in exchange for an equity infusion, and (v) obtain debtor-in-possession financing that will convert to an exit credit facility upon emergence from chapter.

10.     The Debtors will not solicit votes on the Plan.  The Plan provides for the following classification and treatment of Claims and Interests:

| Class | Claim or Interest | Status | Voting Rights |
|---|---|---|---|
| 1. | Other Priority Claims | Unimpaired | Presumed to Accept |
| 2. | Other Secured Claims | Unimpaired | Presumed to Accept |
| 3. | QKD Note Claims | Unimpaired | Presumed to Accept |
| 4. | Nussdorf Trust Notes Claims | Unimpaired | Presumed to Accept |
| 5. | 2004 Note Claims | Unimpaired | Presumed to Accept |
| 6. | General Unsecured Claims | Unimpaired | Presumed to Accept |
| 7. | Intercompany Claims | Unimpaired | Presumed to Accept |
| 8. | Intercompany Interests | Unimpaired | Presumed to Accept |
| 9. | Interests in Perfumania | Impaired | Deemed to Reject |
| 10. | Subordinated 510(b) Interests | Impaired | Deemed to Reject |

11.     No Holders of Claims or Interests are entitled to vote on the Plan because all holders of Claims against or Interests in the Debtors hold either (i) an unclassified Claim, (ii) a Claim or Interest that is Unimpaired, and are therefore deemed to have accepted the Plan, or (iii) an Interest that does not entitle such holder to receive or retain any property under the Plan, and are therefore deemed to have rejected the Plan.

12.     The Plan does provide Perfumania's stockholders with the opportunity to receive consideration in the amount of $2.00 per share (the "Releasing Stockholder Consideration") in exchange for providing a Stockholder Release.[3]  Pursuant to the procedures described herein, no later than two (2) business days after entry of the Procedures Order, the Debtors will distribute to eligible stockholders the Plan, the Disclosure Statement and the necessary forms required to opt-in to the Stockholder Release to receive the Releasing Stockholder Consideration. Stockholders who opt-in to the release on or before October 6, 2017 at 5:00 PM Prevailing Eastern Time (the "Release Opt-In Deadline"), will receive the Releasing Stockholder Consideration on the effective date of the Plan, or as soon as reasonably practicable thereafter.  The Debtors will also provide stockholders with an additional notice and opportunity to opt-in to the Stockholder Release and receive the Releasing Stockholder Consideration after the effective date of the Plan.

**D.      The Investment Agreement**

13.     The cornerstone of the Plan is the NewHoldCo Investment Agreement. Pursuant to the NewHoldCo Investment Agreement, NewHoldCo has agreed to invest $14,263,460 in Perfumania in exchange for 100% of the equity in Reorganized Perfumania (the "NewHoldCo Equity Infusion").  (NewHoldCo Investment Agreement § 2.)  The NewHoldCo Equity Infusion is conditioned upon confirmation of the Plan and the extension of credit under the Exit Facility.   The NewHoldCo Equity Infusion will be used (i) to make distributions under the Plan; (ii) to fund the Releasing Stockholder Consideration; and (iii) to fund ongoing

---

[3]     The Stockholder Release in contained in Article 9.5 of the Plan.

operations. The NewHoldCo Investment Agreement also provides that NewHoldCo will execute the Stockholder Release for no additional consideration.

14.     Accordingly, the Debtors believe that assumption of the NewHoldCo Investment Agreement is a proper exercise of the Debtors' business judgment, that assumption is necessary and proper to ensure the successful consummation of the Plan and the transactions set forth therein, and that this Court should authorize the Debtors' assumption of the Investment Agreement.

<strong>RELIEF REQUESTED</strong>

15.     This Motion seeks entry of three orders.  *First*, the Debtors request immediate entry of the Procedures Order, which is attached as **Exhibit A** hereto:

(a)     Scheduling a Combined Hearing on or about October 6, 2017;

(b)     Approving procedures for objections to the adequacy of the Disclosure Statement and confirmation of the Plan;

(c)     Approving the form and manner of notice of the Combined Hearing and commencement of these Chapter 11 Cases;

(d)     Approving the form and manner of the Release Opt-In Package, which provides notice of the optional Stockholder Release and Releasing Stockholder Consideration to eligible Holders of Interests in Perfumania; and

(e)     Scheduling a hearing on the Assumption Order on the date of the Combined Hearing.

In summary, the Debtors propose the following dates for the confirmation process:

| *Proposed Confirmation Timetable* | |
| --- | --- |
| Petition Date | August 26, 2017 |
| Combined Hearing Notice Mailing Date | As soon as practicable after entry of Procedures Order, but not later than two business days thereafter |
| Objection Deadline | September 29, 2017 |
| Reply Deadline | October 3, 2017 |
| Combined Hearing | October 6, 2017 |
| Assumption Order Hearing | October 6, 2017 |

16.     *Second*, the Debtors request that, following the Combined Hearing, the Court enter the Confirmation Order (a) approving the adequacy of the Disclosure Statement and (b) confirming the Plan.  Prior to the Combined Hearing, the Debtors will file a proposed form of Confirmation Order and a memorandum of law (the "Confirmation Brief") in support of the relief requested therein.  The Debtors propose that other parties-in-interest be permitted to file replies or statements in support of confirmation of the Plan or the adequacy of the Disclosure Statement by the same deadline.

17.     *Third*, the Debtors request entry of the Assumption Order, which is attached as **Exhibit B** hereto, authorizing the Debtors to assume the NewHoldCo Investment Agreement.

## BASIS FOR RELIEF AND APPLICABLE AUTHORITY

## I.    CONFIRMATION AND RELATED PROCEDURES

18.    To promote an efficient chapter 11 process and achieve timely confirmation of the Plan, the Debtors propose the following scheduling, noticing, and other procedures relating to the confirmation process.

### A.    Scheduling a Combined Hearing

19.    Bankruptcy Code section 105(d)(2)(B)(vi) authorizes a bankruptcy court to combine a hearing on a disclosure statement with a hearing on confirmation of a plan. The Debtors and their principal stakeholders seek to confirm the Debtors' consensual Plan as expeditiously and efficiently as possible.  A combined hearing will promote this objective. It will, in particular, minimize business disruption, reduce administrative costs, enhance outcome certainty, ensure prompt distributions to creditors, and generally promote an efficient and value-maximizing restructuring.  Because the Debtors propose a chapter 11 Plan under which all holders of Claims and Interests are deemed to have accepted or rejected the Plan, the delay associated with separate disclosure statement and confirmation hearings would produce no offsetting benefit.  Therefore, the Debtors respectfully request that the Court schedule a Combined Hearing pursuant to Bankruptcy Code section 105(d)(2)(B)(vi).  The Debtors propose a Combined Hearing on or about October 6, 2017.

20.    Under Bankruptcy Rules 2002(b) and 3017(a) and Local Bankruptcy Rule 3017-1(a), the debtor must give 28 days' notice of a disclosure statement or plan confirmation hearing by mail to all creditors.  In addition, Local Bankruptcy Rule 3017-1(a) requires that the hearing on the adequacy of the disclosure statement occur at least 35 days following service of the disclosure statement.  The Debtors will endeavor to mail the Combined Hearing Notices (as defined below) as soon possible after the Procedures Order is entered and, in any event, no later

9

than the second business day thereafter.  The Combined Hearing Notices will be provided on at

least thirty-five (35) days' notice of the Combined Hearing in compliance with Bankruptcy Rules

3017(a) and 2002(b) and Local Bankruptcy Rule 3017-1(a).

**B.      Deadline and Procedures for Objections to the Adequacy of the Disclosure Statement and Confirmation of the Plan**

21.      The Debtors propose that the Court establish September 29, 2017 as the

last day to file objections to the adequacy of the Disclosure Statement or confirmation of the Plan

(the "Objection Deadline").  Bankruptcy Rule 3017(a) authorizes the Court to fix a time for filing

objections to the adequacy of the Disclosure Statement, and Bankruptcy Rule 3020(b)(1)

authorizes the Court to fix a time for filing objections to the Plan.  The Combined Hearing

Notice will be provided on at least twenty-eight (28) days' notice of the deadline to object to

approval of the Disclosure Statement and confirmation of the Plan in compliance with

Bankruptcy Rules 3017(a) and 2002(b).

22.      The Debtors further propose that objections to approval of the Disclosure

Statement or confirmation of the Plan, if any:

(a)      be in writing;

(b)      comply with the Bankruptcy Rules, the Local Bankruptcy Rules, chambers' procedures, and other case management rules and orders of this Court;

(c)      state the name and address of the objecting party, and the nature and amount of any claim or interest asserted by the objecting party against the estate or property of the Debtors;

(d)      state with particularity the legal and factual basis for such objections, and, if practicable, a proposed modification to the Plan that would resolve such objection;

(e)      be filed with the Clerk of the United States Bankruptcy Court for the District of Delaware, together with proof of service thereof; and

(f)     be served by personal service, mail, or overnight delivery, so as to be ACTUALLY RECEIVED no later than 4:00 p.m. (prevailing Eastern time) on the Objection Deadline by (i) the Debtors, Model Reorg Acquisition, LLC, 35 Sawgrass Drive, Suite 2, Bellport, New York 11713 (Attn: Michael W. Katz; Alfred R. Paliani) ; (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036-6522 (Attn: Lisa Laukitis) and 500 Boylston Street Boston, Massachusetts 02116 (Attn: J. Gregory Milmoe; Raquelle L. Kaye) and One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801 (Attn: Anthony Clark); (iii) Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801(Attn: Hannah McCollum; Brya Keilson); (iv) counsel to Wells Fargo Bank, National Association, as administrative agent and collateral agent under the Debtors' prepetition Senior Credit Facility and post-petition debtor-in-possession revolving loan facility, Otterbourg, 230 Park Avenue New York, NY 10169-0075, (Attn: Daniel F. Fiorillo; Chad B. Simon); and (v) the Debtors' top twenty (20) largest creditors listed on each of their bankruptcy petitions, or, if any official committee of unsecured creditors has been appointed, counsel to such committee.

These requirements are customary and will facilitate orderly confirmation proceedings.

## C.      Approval of the Form and Manner of  Notice of the Confirmation Hearing and Commencement of the Chapter 11 Cases

### 1.      Non-Transmission of the Plan and Disclosure Statement to Certain Creditors and Interest Holders

23.     The Debtors are not soliciting votes on the acceptance of the Plan.  Classes 1-8, are unimpaired and conclusively presumed to accept the Plan; Classes 9 and 10 will receive no distribution under the Plan and are deemed to reject the Plan.  See 11 U.S.C. § 1126(f), (g).  Therefore, with the exception of Class 10 Holders of Interests in Perfumania who will receive the Plan and Disclosure Statement in connection with their option to grant the Stockholder Release, the Debtors will not distribute the Plan or Disclosure Statement to non-voting classes.  Under Bankruptcy Rule 3017(d), the Court may excuse the Debtors from mailing the Plan and Disclosure Statement to holders of claims and equity interests in classes deemed to have

accepted or rejected the Plan, and the Debtors submit that such relief is warranted here.  See Fed. R. Bankr. P. 3017.  Transmitting the Disclosure Statement and Plan to numerous non-voting creditors and equity interest holders would impose significant and wholly unnecessary costs and administrative burdens on the Debtors at a time when their resources are better directed elsewhere.

24.     In lieu of transmitting a Plan and Disclosure Statement to the non-voting classes, the Debtors propose to serve on holders of claims and equity interests in such classes a notice of non-voting status of all holders of claims and interests substantially in the form attached hereto either as **Exhibit C-1** for classes presumed to accept the Plan or as **Exhibit C-2** for classes deemed to reject the Plan (each a "Notice of Non-Voting Status," and collectively, the "Notices of Non-Voting Status").  As required by Bankruptcy Rule 3017(d), the Notices of Non-Voting Status advise non-voting holders of their non-voting status, indicates the date of the Combined Hearing and the deadline for filing objections to confirmation of the Plan, and explains how non-voting holders may obtain copies of the Plan and Disclosure Statement.  See Fed. R. Bankr. P. 3017(d).  Non-voting holders will also receive copies of the Combined Hearing Notice, which contains a summary of the Plan, and can easily obtain copies of the Plan and Disclosure Statement at no cost from the Claims and Administrative Agent's website.

2.     Approval of Form and Manner of Release Opt-In Package

25.     **Holders of Interests in Perfumania.**  In connection with the Stockholder Release, the Debtors also propose to distribute, or cause to be distributed, by first-class mail to all Holders of Interests in Perfumania a package for opting in to the Stockholder Release (the "Release Opt-In Package") in the form and manner described herein.

12

26.     Holders of Interests in Perfumania will receive a Release Opt-In Package that shall consist of:

(a)     a copy of the Plan and Disclosure Statement;

(b)     the Stockholder Confirmation Hearing Notice;

(c)     Notice of Non-Voting Status; and

(d)     either a Beneficial Owner Release Opt-In Form, attached hereto as **Exhibit D-1**, or the Registered Owner Release Opt-In Form, attached hereto as **Exhibit D-2**.

27.     Certain beneficial owners of Interests in Perfumania hold their Interests through banks, brokers, dealers, trust companies, or other nominees (collectively, the "Nominees").  As is typical of such securities, the Debtors are unable to identify the vast majority of beneficial owners.  Thus, the Debtors, with the assistance of the Claims and Administrative Agent, will serve the Release Opt-In Packages, including the Beneficial Owner Release Opt-In Form,  in a manner customary in the securities industry so as to maximize the likelihood that the beneficial owners receive the materials in a timely fashion.

28.     Specifically, the Claims and Administrative Agent will transmit the Release Opt-In Package by overnight courier or hand delivery, and, if available, by electronic mail to Nominees.  In addition, each Nominee will be instructed to promptly distribute the Release Opt-In Package to the beneficial owners for which the Nominees held Interests in Perfumania as of the first business day after the Petition Date.

29.     The Claims and Administrative Agent will also provide appropriate materials via electronic mail to the Depository Trust Company (the "DTC") with instructions to post such materials on the DTC's Legal Notice System and announce the information to Nominees.

30.     The beneficial owners will be instructed to relay their decision to grant the Stockholder Release to their Nominees in accordance with the terms of the included on the Beneficial Owner Release Opt-In Form and any instructions provided by the applicable Nominee. Registered owners of Interests in Perfumania will receive a Registered Owner Release Opt-In Form directly from the Claims and Administrative Agent, and should return such form directly to the Claims and Administrative Agent pursuant to the instructions set forth  in the Registered Owner Release Opt-In Form.

2.     Approval of Form and Manner of Notice of Combined Hearing and Commencement of the Chapter 11 Cases

31.     The debtor typically must provide notice of (a) the commencement of its chapter 11 case, (b) a hearing to consider the adequacy of the disclosure statement, and (c) a hearing to consider confirmation of a plan to all creditors and equity holders.  But no statute or rule requires a separate document for each such notice and, in this case, it would be most economical to serve parties-in-interest with a combined notice rather than three individual notices.

32.     Therefore, the Debtors request authorization to send a combined notice of the commencement of the Chapter 11 Cases and of the Combined Hearing in substantially the form annexed hereto as **Exhibit E-1** (the "Combined Hearing Notice") to all known Holders of Claims against the Debtors.   Additionally, the Debtors request authorization to send more tailored combined notice of the commencement of the Chapter 11 Cases and of the Combined Hearing in substantially the form annexed hereto as **Exhibit E-2** (the "Stockholder Combined Hearing Notice", and collectively with the Combined Hearing Notice, the "Combined Hearing Notices") to all Holders of Interests in  Perfumania.

33.    The Combined Hearing Notices will identify the date, time, and place of the Combined Hearing; indicate the deadline and procedures for filing objections to the adequacy of the Disclosure Statement and confirmation of the Plan; describe how the Disclosure Statement and the Plan can be obtained electronically; and summarize the treatment of each Plan class. The Combined Hearing Notices will also inform parties-in-interest of the commencement of the chapter 11 cases and the possible waiver of the meeting of creditors pursuant to Bankruptcy Code section 341, as discussed in the *Debtors' Motion for Order Pursuant to Bankruptcy Code Sections 105, 341 and 521, Bankruptcy Rules 1007(c) And 2015.3(d), and Local Bankruptcy Rule 1007-1(B) (I) Extending Time For Debtors To File Schedules and Statements, (II) Permanently Waiving Requirement To File Same Upon Confirmation of Debtor's Prepackaged Plan, (III) Directing the United States Trustee Not To Convene a 341 Meeting, and (IV) Waiving the Reporting Requirements of Bankruptcy Rule 2015.3*, filed concurrently herewith.

34.    The Debtors propose to serve the Combined Hearing Notices as soon as practical, and in no event more than two business days after, entry of the Procedures Order.   The Debtors also propose to publish a notice (the "Publication Notice") substantially similar to the Combined Hearing Notice in the *Wall Street Journal* (or other suitable national newspaper) and any other publications the Debtors deem appropriate in their sole discretion. Service of the Combined Hearing Notice in this manner will provide sufficient notice to all parties-in-interest of the commencement of the Chapter 11 Cases; the date, time, and place of the Combined Hearing; and the procedures for objecting to the adequacy of the Disclosure Statement or the confirmation of the Plan. The Debtors believe that the Publication Notice will provide sufficient notice to persons who did not otherwise receive the Combined Hearing Notice.

## II.    APPROVAL OF ADEQUACY OF THE DISCLOSURE STATEMENT AND CONFIRMATION OF PLAN

### A.    Approval of Disclosure Statement

35.    Because no class of Claims or Interests is entitled to vote to accept or reject the Plan,  the Debtors believe there is no specific legal requirement that the Debtors obtain approval of a formal Disclosures Statement.  Nevertheless, the Debtors believe the Disclosure Statement is a valuable informational tool that will provide the Debtors' creditors and stockholders with a better understanding of these cases the key components of the Plan.

36.    Thus, out of an abundance of caution and to promote transparency, the Debtors filed the Disclosures Statement contemporaneously with the Plan and the commencement of these Chapter 11 Cases.  At the Combined Hearing, the Debtors will also seek the Court's ruling that the Disclosure Statement provided adequate information within the meaning of Bankruptcy Code section 1125(a)(1).  Accordingly, the Debtors hereby request that, at the Combined Hearing, the Court approving the adequacy of the Disclosure Statement.

37.    Section 1125 of the Bankruptcy Code defines "adequate information" as:

> [I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records . . . that would enable such a hypothetical investor [typical of the holders of claims or interests in the case] of the relevant class to make an informed judgment about the plan . . . .

11 U.S.C. § 1125(a)(1).

38.    The bankruptcy court has broad discretion to determine the adequacy of a disclosure statement.  See In re Phoenix Petroleum Co., 278 B.R. 385, 392-93 (E.D. Pa. 2001) (citing Tex. Extrusion Corp. v. Lockheed Corp. (In re Tex. Extrusion Corp.), 844 F.2d 1142, 1157 (5th Cir. 1988)); In re Dakota Rail, 104 B.R. 138, 142 (Bankr. D. Minn. 1989) (court has "wide discretion to determine . . . whether a disclosure statement contains adequate information

without burdensome, unnecessary and cumbersome detail").  The adequacy of a disclosure statement is assessed on a case-by-case basis, considering the unique facts and circumstances of each case. Courts generally examine whether the disclosure statement contains such information as:

(a)    the circumstances that gave rise to the filing of the bankruptcy petition;

(b)    a complete description of the available assets and their value;

(c)    the anticipated future of the debtor;

(d)    the source of the information provided in the disclosure statement;

(e)    a disclaimer, which typically indicates that no statements or information concerning the debtor or its assets or securities are authorized other than those set forth in the disclosure statement;

(f)    the condition and performance of the debtor while in chapter 11;

(g)    information regarding claims against the estate;

(h)    a liquidation analysis setting forth the estimated return that creditors would receive under chapter 7;

(i)    the accounting and valuation methods used to produce the financial information in the disclosure statement;

(j)    information regarding the future management of the debtor, including the amount of compensation to be paid to any insiders, directors, and/or officers of the debtor;

(k)    a summary of the plan of reorganization;

(l)    an estimate of all administrative expenses, including attorneys' fees and accountants' fees;

(m)    the collectibility of any accounts receivable;

(n)    any financial information, valuations or *pro forma* projections that would be relevant to creditors' determinations of whether to accept or reject the plan;

(o)    information relevant to the risks being taken by the creditors and interest holders;

(p)     the actual or projected value that can be obtained from avoidable transfers;

(q)     the existence, likelihood, and possible success of non-bankruptcy litigation;

(r)     the tax consequences of the plan; and

(s)     the relationship of the debtor with its affiliates.

See, e.g., In re Scioto Valley Mortg. Co., 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988); see also Phoenix Petroleum Co., 278 B.R. at 393.

39.     The Debtors' Disclosure Statement meets these standards.  It is extensive and comprehensive and addresses substantially all of the relevant items outlined in Scioto Valley Mortgage.  The Disclosure Statement contains descriptions and summaries of, among other things, the Plan, certain events preceding the commencement of these cases, claims asserted against the Debtors' estates, securities to be issued under the Plan, risk factors affecting the Plan, a liquidation analysis describing estimated recoveries in a chapter 7 liquidation, and a discussion of federal tax law consequences of the Plan.[4]   In sum, the Disclosure Statement contains adequate information within the meaning of Bankruptcy Code section 1125 and should be approved.

**B.     Confirmation of the Plan**

40.     In advance of the Combined Hearing, the Debtors will file a Confirmation Brief demonstrating that the Plan satisfies each requirement for confirmation and responding to

---

[4]     Certain of the Scioto Valley factors are of little or no relevance in the context of these cases.  For example, because the Debtors do not need to solicit votes on the Plan and have filed a "pre-packaged" Plan, the Disclosure Statement necessarily does not address the Debtors' performance while in chapter 11. Similarly, because general unsecured creditors are unimpaired under the Debtors' Plan, a discussion of likely recoveries on avoidance claims would be of slight value at most.  The Scioto Valley factors are illustrative and not an exhaustive list of items that all disclosure statements must address.

objections to confirmation, if any.  At the Combined Hearing, the Debtors will request that the

Court enter a Confirmation Order substantially in the form to be filed subsequently.

### III.    ASSUMPTION OF THE INVESTMENT AGREEMENT

41.    Bankruptcy Code section 365 provides in pertinent part that a debtor,

"subject to the court's approval, may assume or reject any executory contract," and that the

debtor may assume or reject such contract "at any time before the confirmation of a plan."  11

U.S.C. §§ 365(a), 365(d)(2).

42.    A debtor's determination to assume or reject an executory contract is

governed by the "business judgment" standard.  In re HQ Global Holdings, Inc., 290 B.R. 507,

511 (Bankr. D. Del. 2003) (stating that a debtor's decision to reject an executory contract is

governed by the business judgment standard and can only be overturned if the decision was the

product of bad faith, whim, or caprice); In re Market Square Inn, Inc., 978 F.2d 116, 121 (3d Cir.

1992) (assumption or rejection of lease "will be a matter of business judgment by the bankruptcy

court"); Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp., 872 F.2d 36, 39-40 (3d Cir. 1989)

(same criterion); see also In re Distributed Energy Sys. Corp., 2008 Bankr. LEXIS 2579, at *4

(Bankr. D. Del. Oct. 17, 2008).  In applying the business judgment standard, courts show "great

deference to a debtor's decision" to assume or reject.  Distributed Energy, 2008 Bankr. LEXIS

2579, at *4.

43.    To determine whether the business judgment test is met, "[a] court is

required to examine whether a reasonable business person would make a similar decision under

similar circumstances."  In re Exide Techs., 340 B.R. 222, 239 (Bankr. D. Del. 2006).  Once a

debtor articulates a valid business justification, it is presumed that "in making a business decision

the directors of a corporation acted on an informed basis, in good faith and in the honest belief

that the action taken was in the best interests of the company." Official Comm. Of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.), 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)). In fact, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). The business judgment rule therefore shields a debtor's management from judicial second-guessing, and mandates that a court approve a debtor's business decision unless that decision is a product of bad faith or gross abuse of discretion. See id.; see also Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc., 756 F.2d 1043, 1047 (4th Cir. 1985), cert. denied, 475 U.S. 1057 (1986).

44.    As set forth above, the Debtors have exercised their reasonable business judgment in seeking authority to assume the NewHoldCo Investment Agreement and perform their obligations thereunder. The NewHoldCo Equity Infusion will provide substantial consideration to stockholders in exchange for the Stockholder Release, and provide additional funding for the Debtors' ongoing operations. Therefore, assuming the NewHoldCo Investment Agreement will allow the Debtors to consummate their proposed restructurings as set forth in the Plan and Disclosure Statement, conferring benefits upon the Debtors which will more than outweigh the costs of fulfilling the Debtors' obligations under the NewHoldCo Investment Agreement. Accordingly, this Court should authorize the Debtors to assume the NewHoldCo Investment Agreement under section 365 of the Bankruptcy Code.

### NOTICE

45.    Notice of this Motion shall be given to the following notice parties (the "Notice Parties"): (a) the U.S. Trustee; (b) the holders of the 20 largest unsecured claims against

the Debtors (on a consolidated basis); (c) Otterbourg, counsel to the agent for the Debtors'

prepetition Senior Credit Facility; (d) Wells Fargo Bank, National Association, as agent for the

Debtors' prepetition Senior Credit Facility; and (e) any such other party entitled to notice

pursuant to Local Bankruptcy Rule 9013-1(m).  The Debtors submit that no other or further

notice need be provided.

<strong>NO PRIOR RELIEF</strong>

46.    No previous request for the relief sought herein has been made to this

Court or any other court.

<strong>[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]</strong>

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter orders, substantially in the forms annexed hereto, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated:    Wilmington, Delaware
          August 26, 2017

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

/s/ *Anthony W. Clark*
Anthony W. Clark (I.D. No. 2051)
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
Telephone: (302) 651-3000
Fax: (302) 651-3001

- and -

J. Gregory Milmoe (*pro hac vice admission pending*)
Raquelle L. Kaye (*pro hac vice admission pending*)
500 Boylston Street
Boston, Massachusetts 02116
Telephone: (617) 573-4800
Fax: (617) 573-4822

- and -

Lisa Laukitis (*pro hac vice admission pending*)
Four Times Square
New York, New York 10036-6522
Telephone: (212) 735-3000
Fax: (212) 735-2000

*Proposed Counsel for Debtors and Debtors in Possession*

## EXHIBIT A

**PROCEDURES ORDER**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
             :

In re:                        :        Chapter 11
             :

MODEL REORG ACQUISITION, LLC, et al., :        Case No. 17-11794 (___)
             :

             Debtors.[1]   :        (Joint Administration Pending)
             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ORDER GRANTING DEBTORS' MOTION PURSUANT TO BANKRUPTCY CODE
SECTIONS 105, 365, 1125, 1126, 1128, AND 1129, BANKRUPTCY RULES 2002, 3017,
3018, AND 3020, AND LOCAL BANKRUPTCY RULE 3017-1 FOR ORDER
(I) APPROVING PROCEDURES FOR DETERMINING ADEQUACY OF DISCLOSURE
STATEMENT AND CONSIDERING CONFIRMATION OF PLAN AND
(II) SCHEDULING A HEARING ON THE ASSUMPTION ORDER**

Upon the motion (the "Motion")[2] of the Debtors for an order (this "Order"),

pursuant to sections 105, 365, 1125, 1126, 1128, and 1129 of title 11 of the United States Code

(the "Bankruptcy Code"), Rules 2002, 3017, 3018, and 3020 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), and Rule 3017-1 of the Local Rules of Bankruptcy Practice

and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local

Bankruptcy Rules") (i) scheduling a Combined Hearing on (x) the adequacy of the Debtors'

Disclosure Statement and (y) confirmation of the Plan; (ii) approving the procedures for

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Perfumania Holdings, Inc. (7964); Perfumania, Inc. (6340); Magnifique Parfumes and Cosmetics, Inc. (6420); Ten Kesef II, Inc. (1253); Perfumania.com, Inc. (4688); Model Reorg Acquisition, LLC (0318); Northern Group, Inc. (3226); Perfumania Puerto Rico, Inc. (6787); Quality King Fragrance, Inc. (4939); Scents of Worth, Inc. (1732); Jacavi, LLC (6863); Distribution Concepts, LLC (8845); Flowing Velvet, Inc. (7294); Aladdin Fragrances, Inc. (4338); Niche Marketing Group, Inc. (1943); Northern Brands, Inc. (7186); Northern Amenities, Ltd. (5387); Global Duty Free Supply, Inc. (2686); and Perfumers Art, Inc. (6616).  The address of the Debtors' corporate headquarters is 35 Sawgrass Drive, Suite 2, Bellport, New York 11713.

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion or the First Day Declaration.

objecting to the adequacy of the Disclosure Statement and confirmation of the Plan;

(iii) approving the form and manner of notice of the combined hearing and commencement of

these chapter 11 cases; and (iv) scheduling a hearing on the Assumption Order, all as more fully

described in the Motion; and upon the First Day Declaration; and due and sufficient notice of the

Motion having been given under the particular circumstances; and it appearing that no other or

further notice need be provided; and it appearing that the relief requested by the Motion is in the

best interests of the Debtors, their estates, their creditors, and other parties in interest; and after

due deliberation thereon and good and sufficient cause appearing therefor, it is hereby,

**ORDERED, ADJUDGED AND DECREED that:**

1.      The Motion is GRANTED as set forth herein.

2.      The Combined Hearing, at which time the Court will consider, among

other things, the adequacy of the Disclosure Statement and confirmation of the Plan, shall

commence at __:__ _.m., (prevailing Eastern Time) on October ___, 2017, which date may be

continued from time to time without further notice other than adjournments announced in open

court.

3.      Any objections to the Disclosure Statement or confirmation of the Plan

must be filed, together with proof of service, with the Bankruptcy Court so as to be ***actually

received*** by 4:00 p.m. (prevailing Eastern time) on _____ ____, 2017 (the

"Objection Deadline"), unless otherwise agreed to by the Debtors in their sole discretion.  The

Debtors' Confirmation Brief, and replies and statements of other parties-in-interest in support of

confirmation of the Plan and/or the adequacy of the Disclosure Statement, if any, shall be due on

_____ ____, 2017.

2

4.      Any objections to the adequacy of the Disclosure Statement or confirmation of the Plan must: (a) be in writing; (b) comply with the Bankruptcy Rules, the Local Bankruptcy Rules, Chambers' procedures, and other case management rules and orders of this Court; (c) state the name and address of the objecting party, and the nature and amount of any claim or interest asserted by the objecting party against the estate or property of the Debtors; and (d) state with particularity the legal and factual basis for such objections, and, if practicable, a proposed modification to the Plan that would resolve such objection.

5.      Any objections to the adequacy of the Disclosure Statement or confirmation of the Plan must be served so that they are *actually received* no later than the Objection Deadline by the following parties: (i) the Debtors, Model Reorg Acquisition, LLC, 35 Sawgrass Drive, Suite 2, Bellport, New York 11713 (Attn: Michael W. Katz; Alfred R. Paliani) ; (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036-6522 (Attn: Lisa Laukitis) and 500 Boylston Street Boston, Massachusetts 02116 (Attn: J. Gregory Milmoe; Raquelle L. Kaye) and One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801 (Attn: Anthony Clark); (iii) Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: Hannah McCollum; Brya Keilson); (iv) counsel to Wells Fargo Bank, National Association, as administrative agent and collateral agent under the Debtors' prepetition Senior Credit Facility and post-petition debtor-in-possession revolving loan facility, Otterbourg, 230 Park Avenue New York, NY 10169-0075, (Attn: Daniel F. Fiorillo; Chad B. Simon); and (v) the Debtors' top twenty (20) largest creditors listed on each of their bankruptcy petitions, or, if any official committee of unsecured creditors has been appointed, counsel to such committee.

6.      Any objections not timely filed and served in the manner set forth in this Order may not be considered and may be overruled.

7.      The forms of the Combined Hearing Notices, substantially in the form attached as **Exhibit E-1** and **Exhibit E-2** to the Motion, comply with the requirements of Bankruptcy Rules 2002 and 3017 and are hereby conditionally approved, subject to final approval at the Combined Hearing.

8.      The Debtors shall serve the Combined Hearing Notices by no later than two (2) calendar days after the entry of this Order on: (a) holders of Claims or Interests; (b) all parties filing a notice of appearance and request for service pursuant to Bankruptcy Rule 2002 in these Chapter 11 Cases; (c) state and local taxing authorities for states and localities in which the Debtors did business; (d) the Internal Revenue Service; (e) the Securities and Exchange Commission; (f) the United States Attorney for the District of Delaware; (g) all counterparties to executory contracts and leases; (h) the U.S. Trustee; (i) all federal and state authorities that regulate any aspect of the Debtors' business; and (j) all persons or entities listed on the Debtors' creditor mailing matrix.

9.      The Debtors shall publish the Publication Notice in the Wall Street Journal (or other suitable national newspaper) and any other publications the Debtors deem appropriate in their sole discretion as soon as reasonably practical after entry of this Order.  Publication of the Publication Notice, together with service of the Combined Hearing Notices as set forth in this Order, is sufficient and appropriate under the circumstances, but all parties' rights to raise this issue at the Combined Hearing are reserved.

10.     The forms of Notices of Non-Voting Status, substantially in the forms attached as **Exhibit C-1** and **Exhibit C-2** to the Motion, comply with the requirements of Bankruptcy Rule 3017 and are hereby conditionally approved, subject to final approval at the Combined Hearing.  A Notice of Non-Voting Status shall be served on all holders of Claims and Interests.

11.     The contents of the Release Opt-In Package, as set forth in the Motion, including the Beneficial Owner Release Opt-In Form, substantially in the form attached as **Exhibit D-1** to the Motion and the Registered Holder Release Opt-In Form, substantially in the form attached as **Exhibit D-2**, complies with the requirements of Bankruptcy Rules 2002 and 3017 and is hereby conditionally approved, subject to final approval at the Combined Hearing, as constituting sufficient notice to Holders of Interests in Perfumania.  The Debtors shall transmit the Release Opt-In Package no later than two (2) business days after entry of this Order.

12.     The Debtors shall serve the Disclosure Statement, the Plan, and a copy of this Order on the parties included on the Debtors' consolidated list of twenty (20) largest unsecured creditors, the U.S. Trustee, and all parties filing a notice of appearance and request for service pursuant to Bankruptcy Rule 2002 in these Chapter 11 Cases as of the date hereof.

13.     The schedule of events set forth on **Exhibit 1** hereto relating to confirmation of the Plan is hereby approved in its entirety, and the Court hereby finds that the schedule of events is consistent with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules.

14.     The Debtors are not required to transmit the Disclosure Statement or the Plan to creditors or interest holders that (a) are unimpaired and therefore conclusively presume to accept the Plan, or (b) are impaired, receiving no distribution on account of such Claims or

Interests, and are therefore deemed to reject the Plan.   For the avoidance of doubt, nothing in

this Order shall be deemed to constitute approval of the Disclosure Statement or confirmation of

the Plan, but all parties' rights to raise this issue at the Combined Hearing are reserved.

15.     The Debtors are not required to solicit votes on the acceptance or rejection

of the Plan because the Plan provides that all holders of Claims and Interests are either

unimpaired, and thus, conclusively deemed to have accepted the Plan pursuant to section 1126(f)

of the Bankruptcy Code, or will receive no distribution under the Plan, and thus, are conclusively

deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code, but all parties'

rights to raise this issue at the Combined Hearing are reserved.

16.     The hearing on the Assumption Order is scheduled for

_____ ____, 2017 at __:__ __.m. (Eastern Time). The objection deadline for the

Assumption Order shall be _____ ____, 2017 at __:__ __.m. (Eastern Time).

17.     The Debtors are authorized to take all actions necessary to effectuate the

relief granted pursuant to this Order in accordance with the Motion.

18.     Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective

and enforceable immediately upon entry hereof.

19.     All time periods set forth in this Order shall be calculated in accordance

with Bankruptcy Rule 9006(a).

20.     The Court retains jurisdiction with respect to all matters arising from or

related to the implementation, interpretation and enforcement of this Order.

Dated: Wilmington, Delaware

_____, 2017

_____
UNITED STATES BANKRUPTCY JUDGE

6

**EXHIBIT 1**

**Schedule of Events**

**Schedule of Events**

*Confirmation Timetable*

| | |
|---|---|
| Petition Date | August 26, 2017 |
| Combined Hearing Notice Mailing Date | As soon as practicable after entry of Procedures Order, but not later than  two business days thereafter |
| Objection Deadline | September ___, 2017 |
| Reply Deadline | October ___, 2017 |
| Combined Hearing | October ___, 2017 |
| Assumption Order Hearing | October ___, 2017 |

## EXHIBIT B

**ASSUMPTION ORDER**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                   :

In re:                                  :     Chapter 11
                                   :

MODEL REORG ACQUISITION, LLC, et al., :     Case No. 17-11794 (___)
                                   :

                     Debtors.[1]       :     (Joint Administration Pending)
                                   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## ORDER GRANTING DEBTORS' MOTION PURSUANT TO BANKRUPTCY CODE SECTIONS 105 AND 365 FOR ORDER AUTHORIZING DEBTORS TO ASSUME THE NEW HOLDCO INVESTMENT AGREEMENT

Upon the motion (the "Motion")[2] of the Debtors for an order (this "Order"), pursuant to sections 105 and 365 of title 11 of the United States Code (the "Bankruptcy Code") authorizing the Debtors to assume the New HoldCo Investment Agreement, all as more fully described in the Motion; and upon the First Day Declaration; and due and sufficient notice of the Motion having been given under the particular circumstances; and it appearing that no other or further notice need be provided; and it appearing that the relief requested by the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and after due deliberation thereon and good and sufficient cause appearing therefor, it is hereby,

### ORDERED, ADJUDGED AND DECREED that:

---

[1]     The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Perfumania Holdings, Inc. (7964); Perfumania, Inc. (6340); Magnifique Parfumes and Cosmetics, Inc. (6420); Ten Kesef II, Inc. (1253); Perfumania.com, Inc. (4688); Model Reorg Acquisition, LLC (0318); Northern Group, Inc. (3226); Perfumania Puerto Rico, Inc. (6787); Quality King Fragrance, Inc. (4939); Scents of Worth, Inc. (1732); Jacavi, LLC (6863); Distribution Concepts, LLC (8845); Flowing Velvet, Inc. (7294); Aladdin Fragrances, Inc. (4338); Niche Marketing Group, Inc. (1943); Northern Brands, Inc. (7186); Northern Amenities, Ltd. (5387); Global Duty Free Supply, Inc. (2686); and Perfumers Art, Inc. (6616).  The address of the Debtors' corporate headquarters is 35 Sawgrass Drive, Suite 2, Bellport, New York 11713.

[2]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion or the First Day Declaration.

1.       The Motion is GRANTED as set forth herein.

2.       The Debtors' assumption of the New HoldCo Investment Agreement, attached hereto as **Exhibit A**, is hereby approved, and the requirements of Bankruptcy Code section 365 with respect thereto are hereby deemed satisfied.  The Debtors are authorized to assume the New HoldCo Investment Agreement, and the Debtors and each of their respective officers, employees, and agents are hereby authorized to execute such documents and do such acts as are necessary or desirable to carry out the transactions contemplated by this Order.

3.       Notwithstanding Bankruptcy Rule 6006, this Order shall be effective and enforceable immediately upon entry hereof.

4.       The requirements set forth in Local Bankruptcy Rule 9013-1(b) are satisfied by the contents of the Motion.

5.       The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

6.       This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

Dated: Wilmington, Delaware

_____, 2017

_____
UNITED STATES BANKRUPTCY JUDGE

## **EXHIBIT A**

### **NEWHOLDCO INVESTMENT AGREEMENT**

<u>INVESTMENT AGREEMENT</u>

This Investment Agreement (the "Agreement") dated as of August 26, 2017 is between and among MJA Beauty, LLC, a Delaware limited liability company ("NewHoldCo"), each of the individual Members of NewHoldCo whose names appear on the signature page hereof, and Perfumania Holdings, Inc., a Florida corporation ("Perfumania"). Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Plan, as defined below.

WHEREAS, NewHoldCo is the beneficial owner of 8,362,032 outstanding shares of common stock of Perfumania (the "NewHoldCo Shares") which constitutes approximately 53.97% of the total outstanding shares of Perfumania;

WHEREAS, Perfumania, together with certain of its subsidiaries, contemplates filing a bankruptcy case under chapter 11 of the United States Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), pursuant to which Perfumania will seek to have the Plan of Reorganization attached hereto as Exhibit A (the "Plan") confirmed by the Bankruptcy Court and emerge as a reorganized company ("Reorganized Perfumania" or the "Company");

WHEREAS, the Plan provides, among other things, for the cancellation of all outstanding common shares of Perfumania for no consideration, and the distribution to former holders of such common stock, other than NewHoldCo, who execute the release described in the Plan (each a "Stockholder Release") the sum of two dollars ($2.00) in cash for each share of Perfumania owned by such holders of common stock (in the aggregate, the "Releasing Stockholder Consideration");

WHEREAS, subject to the terms and conditions of this Agreement, NewHoldCo will invest $14,263,460 (the "Purchase Price") to acquire 100% of the capital stock of Reorganized Perfumania.

NOW, THEREFORE, in consideration of the foregoing premises and the mutual promises contained herein, the parties hereto agree as follows:

1. <u>Purchase of Common Stock.</u>

On the Effective Date of the Plan and at the closing (the "Closing"), NewHoldCo shall purchase from Reorganized Perfumania and Reorganized Perfumania shall sell to NewHoldCo 1,000 shares of common stock, par value $.01 per share, of Reorganized Perfumania (the "Stock"), constituting all of the authorized, issued and outstanding shares of Reorganized Perfumania, free and clear of all liens, claims and encumbrances of any kind whatsoever.

2. <u>Purchase Price.</u>

At the Closing, NewHoldCo shall cause to be wired to an account designated by Perfumania, $14,263,460 representing the Purchase Price for the Stock which shall be used by Reorganized Perfumania to make distributions of the Releasing Stockholder Consideration to former stockholders of Perfumania (other than NewHoldCo) who execute a Stockholder Release

and, to the extent not all former stockholders execute the Stockholder Release, for general corporate purposes.

      3.    <u>Condition to the Investment.</u>

      The obligation of NewHoldCo to consummate the transactions contemplated hereby is subject to the following conditions precedent: (a) the Plan shall have been confirmed by the Bankruptcy Court no later than October 31, 2017, pursuant to a confirmation order satisfactory in all material respects to NewHoldCo and Perfumania; (b) upon such confirmation of the Plan, there shall have been no material changes to the Plan except such changes as may have been consented to by both NewHoldCo and Perfumania; and (c) the Exit Facility described in the Plan shall have been executed, become effective and be ready to be funded simultaneously with the funding by NewHoldCo of the Purchase Price.

      4.    <u>Representations and Agreements of NewHoldCo.</u>

      (a)    NewHoldCo (i) is an "accredited investor" as defined in Rule 501(a) under the Securities Act, (ii) is purchasing the Stock for its own account and not with a view to the distribution thereof, (iii) has no present intention of selling, granting any participation in, or otherwise distributing the Stock in violation of law, (iv) understands that the Stock has not been registered under the Securities Act of 1933, as amended (the "Securities Act") and may be resold only if registered pursuant to the provisions of the Securities Act or if an exemption from registration is available, and that the Company is not required to register the Stock, (v) will not sell, transfer or otherwise dispose of the Stock or any interest therein except in compliance with the registration requirements of the Securities Act and any other applicable securities laws or pursuant to an applicable exemption therefrom, (vi) is knowledgeable with respect to the Company and its condition (financial and otherwise), results of operations, businesses, properties, assets, liabilities, plans, management, financing and prospects, (vii) has such knowledge and experience in financial and business matters and in investments of this type that it is capable of evaluating the merits and risks of its investment in the Stock and of making an informed investment decision and has so evaluated the merits and risks of such investment and without reliance upon the Company or any other person made its own analysis and decision to consummate the purchase, (viii) recognizes that an investment in the Stock involves a high degree of risk, including a risk of total loss of NewHoldCo's investment, and is able to bear the economic risk of an investment in the Stock, including holding it for an indefinite period, and is able to afford a complete loss of such investment, (ix) was given the opportunity to ask questions and receive answers concerning the terms and conditions of the purchase of the Stock and to obtain any additional information which the Company possesses or can acquire without unreasonable effort or expense, including with respect to the Company's condition (financial and otherwise), results of operations, businesses, properties, assets, liabilities, plans, management, financing and prospects, and the Company or its representatives have answered to the satisfaction of NewHoldCo all inquiries that NewHoldCo has put to the Company and (x) acknowledges that it was afforded the opportunity to conduct due diligence on the Company prior to execution of this Agreement.

      (b)    NewHoldCo will have sufficient immediately available funds in cash to pay the Purchase Price at the Closing.

2

(c)       Except for this Agreement and NewHoldCo's LLC operating agreement, NewHoldCo has not entered into and is not aware of any agreements, arrangements or understandings with the Company or any of its subsidiaries, any of their respective officers, directors, employees, stockholders or affiliates or any third parties (written or oral) relating to the purchase, holding or disposition of any of the Stock.

(d)       NewHoldCo acknowledges that the issuance of the Stock has not been, and will not be, registered under the Securities Act or under any state securities laws by reason of a specific exemption from the registration provisions of the Securities Act, the availability of which depends upon, among other things, the bona fide nature of NewHoldCo's investment intent and the accuracy of NewHoldCo's representations as expressed herein.  Prior to the Closing, NewHoldCo shall promptly notify the Company in writing of any changes in the information set forth in this Agreement with respect to NewHoldCo.

(e)       NewHoldCo understands that nothing in this Agreement or any other materials presented to NewHoldCo in connection with the purchase contemplated hereby constitutes legal, tax or investment advice.  NewHoldCo has consulted such legal, tax, accounting and investment advisors as it, in its sole discretion, has deemed to be necessary or appropriate in connection with its purchase of the Stock, and, except as expressly provided herein, it relies solely on such advisors and not on any statements or representations of the Company or any of the Company's agents or representatives with respect to such legal, tax, accounting and investment consequences.  NewHoldCo understands that it, and not the Company, shall be responsible for its own tax liability that may arise as a result of the purchase of the Stock.

(f)       NewHoldCo agrees to be bound by the Stockholder Release set forth in Article IV of the Plan but shall not receive any Releasing Stockholder Consideration.

5.       Representations and Agreements of Each Member of NewHoldCo.

(a)       Each of the members (the "Members") of NewHoldCo owns the percentage interest in NewHoldCo set forth next to his or her name on the signature page hereof, which, in the aggregate, constitutes 100% of the outstanding member interests in NewHoldCo.

(b)       Each of the Members makes, severally and not jointly, for him or herself each of the representations made by NewHoldCo in Section 4 hereof, revised mutatis mutandi to apply to each of the Members rather than NewHoldCo, except that each Member's maximum liability in respect of the representations in Section 4 is limited to the amount set forth next to such Member's name on the signature page hereof.

(c)       Each of the Members agrees with the Company that, on or before the Closing, he or she will deposit or cause to be deposited into NewHoldCo's account funds equal to the amount set forth next to such Members name on the signature page hereof.

6.       Representations and Agreements of Perfumania.

(a)       When issued at Closing by the Company to NewHoldCo, all of the shares of Stock (i) shall have been duly authorized, validly issued, fully paid and non-assessable, (ii) shall be owned of record by NewHoldCo free and clear of all liens, encumbrances and adverse

3

claims, (iii) shall represent 100% of the issued and outstanding shares of capital stock of all classes of the Company, and (iv) shall have been issued in compliance with all applicable laws, and not in violation of any agreement, arrangement, or commitment to which the Company is a party or is subject to or in violation of any preemptive or similar right.

(b)    As of the Closing, there shall be no outstanding or authorized options, warrants, convertible securities or other rights, agreements, arrangements or commitments of any character relating to the capital stock of the Company or, except as provided in this Agreement, obligating  the Company to issue or sell any shares of capital stock of, or any other interest in, the Company.  As of the Closing, the Company will not have outstanding or authorized any stock appreciation, phantom stock, profit participation or similar rights, and there shall not be any voting trusts, stockholder agreements, proxies or other agreements or understandings in effect with respect to the voting, issuance or transfer of any of the Stock.

(c)    Perfumania has full corporate power and authority to enter into this Agreement, to carry out its obligations hereunder, and to consummate the transactions contemplated hereby. The execution and delivery by Perfumania of this Agreement, the performance by Perfumania of its obligations hereunder, and the consummation by Perfumania of the transactions contemplated hereby have been duly authorized by all requisite corporate action on the part of Perfumania. This Agreement has been duly executed and delivered by Perfumania, and (assuming due authorization, execution and delivery by the other parties hereto) this Agreement constitutes a legal, valid and binding obligation of Perfumania enforceable against it in accordance with its terms.

(d)    The execution, delivery and performance by Perfumania of this Agreement, and the consummation of the transactions contemplated hereby, do not and will not: (a) conflict with or result in a violation or breach of, or default under, any provision of the certificate of incorporation, by-laws or other organizational documents of Perfumania; (b) conflict with or result in a violation or breach of any provision of any law or governmental order applicable to Perfumania; (c) except as contemplated hereby, require the consent, notice or other action by any person or entity under, conflict with, result in a violation or breach of, constitute a default or an event that, with or without notice or lapse of time or both, would constitute a default under, result in the acceleration of or create in any party the right to accelerate, terminate, modify or cancel any agreement to which Perfumania is a party or by which Perfumania is bound or to which any of its properties and assets are subject; or (d) result in the creation or imposition of any encumbrance on any properties or assets of Perfumania.

7.    Notices.

(a)    All notices, requests, consents, claims, demands, waivers and other communications hereunder shall be in writing and shall be deemed to have been given: (a) when delivered by hand (with written confirmation of receipt); (b) when received by the addressee if sent by a nationally recognized overnight courier (receipt requested); (c) on the date sent by facsimile or e-mail of a PDF document (with confirmation of transmission) if sent during normal business hours of the recipient, and on the next Business Day if sent after normal business hours of the recipient; or (d) on the third day after the date mailed, by certified or registered mail, return receipt requested, postage prepaid. Such communications shall be sent to the respective

8060017-3

parties at the following addresses (or at such other address for a party as shall have specified in writing.

If to the Company:

Perfumania Holdings, Inc.
35 Sawgrass Drive, Suite 2
Bellport, NY 11713
Attention: Michael Katz, Chief Executive Officer
mikek@perfhold.com

With a copy to:

Skadden, Arps, Slate, Meagher & Flom LLP
4 Times Square
New York, NY 10036
Attention: Lisa Laukitis, Esq.
lisa.laukitis@skadden.com

If to NewHoldCo: to each of its Members

With a copy to each of:

Richards Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Attention: Mark J. Gentile, Esq.
gentile@rlf.com

Berger & Singerman
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Attention: Daniel L. Lampert, Esq.
dlampert@bergersingerman.com

If to Ruth Nussdorf:

c/o Alfred R. Paliani
General Counsel
35 Sawgrass Drive
Bellport, N.Y. 11713
fpaliani@gmail.com

8060017-3

If to Arlene Nussdorf:

      c/o Alfred R. Paliani
      General Counsel
      35 Sawgrass Drive
      Bellport, N.Y. 11713
      fpaliani@gmail.com

If to Stephen Nussdorf:

      c/o Alfred R. Paliani
      General Counsel
      35 Sawgrass Drive
      Bellport, N.Y. 11713
      fpaliani@gmail.com

If to Glenn Nussdorf:

      c/o Alfred R. Paliani
      General Counsel
      35 Sawgrass Drive
      Bellport, N.Y. 11713
      fpaliani@gmail.com

If to JM-CO Capital Fund, LLC

      c/o Berger Singerman LLP
      1450 Brickell Avenue, Suite 1900
      Miami, FL 33131
      Attn: Daniel L. Lampert, Esq.

    (b)    **Severability.**  If any term or provision of this Agreement is invalid, illegal or unenforceable in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction. Upon such determination that any term or other provision is invalid, illegal or unenforceable, the parties hereto shall negotiate in good faith to modify this Agreement so as to effect the original intent of the parties as closely as possible in a mutually acceptable manner in order that the transactions contemplated hereby be consummated as originally contemplated to the greatest extent possible.

    (c)    **Entire Agreement.**  This Agreement (including the Exhibit), constitutes the sole and entire agreement with respect to the subject matter contained herein, and supersedes all prior and contemporaneous representations, warranties, understandings and agreements, both written and oral, with respect to such subject matter.

    (d)    **Successors and Assigns.**  This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and permitted assigns. Neither

6

party may assign its rights or obligations hereunder without the prior written consent of the other party, which consent shall not be unreasonably withheld or delayed. No assignment shall relieve the assigning party of any of its obligations hereunder.

(e)     **Amendment and Modification; Waiver.**  This Agreement may only be amended, modified or supplemented by an agreement in writing signed by each party hereto. No waiver by any party of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the party so waiving. No waiver by any party shall operate or be construed as a waiver in respect of any failure, breach or default not expressly identified by such written waiver, whether of a similar or different character, and whether occurring before or after that waiver. No failure to exercise, or delay in exercising, any right, remedy, power or privilege arising from this Agreement shall operate or be construed as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

(f)     **Governing Law; Submission to Jurisdiction; Waiver of Jury Trial**.  This Agreement, and any and all proceedings commenced in connection with or relating to this Agreement, shall be governed by, and construed in accordance with, the internal laws of the State of Delaware without regard to the laws that might otherwise govern under the applicable principles of conflict of laws of the State of Delaware.

(g)     **Specific Performance.**  The parties agree that irreparable damage would occur if any provision of this Agreement were not performed in accordance with the terms hereof and that the parties shall be entitled to specific performance of the terms hereof, in addition to any other remedy to which they are entitled at law or in equity.

(h)     **Counterparts.** This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed copy of this Agreement delivered by facsimile, e-mail or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

**(i)     Shares of Perfumania Contributed to NewHoldCo**

| | |
|---|---|
| Glenn Nussdorf | 3,536,129 |
| Stephen Nussdorf | 2,327,375 |
| Arlene Nussdorf | 1,745,444 |
| Ruth Nussdorf | 133,333 |
| JM Co Capital Fund, LLC | 619,751 |

**(j)     Class A Units in NewHoldCo Issued to Members**

| | |
|---|---|
| Glenn Nussdorf | 315 |
| Stephen Nussdorf | 315 |
| Arlene Nussdorf | 315 |
| Ruth Nussdorf | 15 |
| JM-Co Capital Fund, LLC | 40 |

7

IN WITNESS WHEREOF, the parties hereto have executed this Agreement intending to be bound as of the date first written above.

**PERFUMANIA HOLDINGS, INC.**

By: _____
Name:
Title:

**MJA BEAUTY, LLC**

By: _____
Name:
Title:

_____        $   213,951.90        1.50%

_____
Arlene Nussdorf                         $4,492,989.90        31.50%

_____
Stephen Nussdorf                        $4,492,989.90        31.50%

_____
Glenn Nussdorf                          $4,492,989.90        31.50%

**JM-CO CAPITAL FUND, LLC**

By: _____
Rene Garcia, Manager                    $   570,538.40        4.00%

8

8060017-3

IN WITNESS WHEREOF, the parties hereto have executed this Agreement intending to be bound as of the date first written above.

**PERFUMANIA HOLDINGS, INC.**

By:_____
Name:
Title:

**MJA BEAUTY, LLC**

By: *Alfred R. Paliani*
Name: Alfred R. Paliani
Title: Manager


| | | |
|---|---|---|
| Ruth Nussdorf | $ 213,951.90 | 1.50% |
| Arlene Nussdorf | $4,492,989.90 | 31.50% |
| Stephen Nussdorf | $4,492,989.90 | 31.50% |
| Glenn Nussdorf | $4,492,989.90 | 31.50% |

**JM-CO CAPITAL FUND, LLC**

By:_____
Rene Garcia, Manager          $ 570,538.40          4.00%

8

# **EXHIBIT C-1**

## **NOTICE OF NON-VOTING STATUS – UNIMPAIRED CLASSES**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                         :

In re:                             :   Chapter 11
                         :

MODEL REORG ACQUISITION, LLC, et al., :   Case No. 17-11794 (___)
                         :

              Debtors.[1]  :   (Joint Administration Pending)
                         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**NOTICE OF NON-VOTING STATUS RE PREPACKAGED JOINT**
**CHAPTER 11 PLAN OF REORGANIZATION OF MODEL REORG ACQUISITIONS, LLC**
**AND ITS AFFILIATED DEBTORS AND DEBTORS IN POSSESSION**

**UNIMPAIRED CLAIMS; CONCLUSIVELY PRESUMED TO ACCEPT**

TO: ALL HOLDERS OF CLAIMS AND INTERESTS IN CLASSES 1-8

On August 26, 2017 (the "Petition Date"), the Debtors filed the *Prepackaged Joint Chapter 11 Plan of Reorganization of Model Reorg Acquisitions, LLC and Its Affiliated Debtors and Debtors In Possession* (as may be amended, the "Plan") and accompanying Disclosure Statement for the Plan (the "Disclosure Statement").

Under the Plan, holders of Claims or Interests in Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), Class 3 (QKD Note Claims), Class 4 (Nussdorf Trust Notes Claims), Class 5 ( 2004 Note Claims), Class 6 (General Unsecured Claims), Class 7 (Intercompany Claims), and Class 8 (Intercompany Interests) are Unimpaired within the meaning of section 1124 of the Bankruptcy Code and, therefore, pursuant to section 1126(f) of the Bankruptcy Code, are conclusively presumed to have accepted the Plan and are not entitled to vote on the Plan.

**You have been sent this notice because you have been identified as a holder of a Claim in Classes 1-8, and as such, are Unimpaired under the Plan and not entitled to vote on the Plan.**

The accompanying *Notice Of (I) Commencement Of Chapter 11 Cases; (II) Imposition Of Automatic Stay; And (III) Hearing To Confirm The Prepackaged Joint Chapter 11 Plan Of Reorganization Of Model Reorg Acquisitions, LLC And Its Affiliated Debtors And Debtors In Possession And Related Matters* (the "Combined Hearing Notice") sets forth important deadlines with respect to the approval of the Plan and how you may obtain a copy of the Plan and Disclosure Statement at no charge to you.

If you have any questions regarding the status of your Claim or wish to obtain additional information, you may contact the Debtors' Claims and Administrative Agent at:

> Epiq Bankruptcy Solutions, LLC
> 777 Third Avenue, 12th Floor
> New York, NY 10017
> **Telephone Number: (888) 457-6672**
> **International Number: +1 (503) 597-7716**
> tabulation@epiqsystems.com

---

[1]   The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Perfumania Holdings, Inc. (7964); Perfumania, Inc. (6340); Magnifique Parfumes and Cosmetics, Inc. (6420); Ten Kesef II, Inc. (1253); Perfumania.com, Inc. (4688); Model Reorg Acquisition, LLC (0318); Northern Group, Inc. (3226); Perfumania Puerto Rico, Inc. (6787); Quality King Fragrance, Inc. (4939); Scents of Worth, Inc. (1732); Jacavi, LLC (6863); Distribution Concepts, LLC (8845); Flowing Velvet, Inc. (7294); Aladdin Fragrances, Inc. (4338); Niche Marketing Group, Inc. (1943); Northern Brands, Inc. (7186); Northern Amenities, Ltd. (5387); Global Duty Free Supply, Inc. (2686); and Perfumers Art, Inc. (6616).  The address of the Debtors' corporate headquarters is 35 Sawgrass Drive, Suite 2, Bellport, New York 11713.

## **EXHIBIT C-2**

**NOTICE OF NON-VOTING STATUS – REJECTING CLASSES**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
In re:                                        :   Chapter 11
                                              :
MODEL REORG ACQUISITION, LLC, et al.,         :   Case No. 17-11794 (___)
                                              :
                         Debtors.¹            :   (Joint Administration Pending)
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

**NOTICE OF NON-VOTING STATUS RE PREPACKAGED JOINT
CHAPTER 11 PLAN OF REORGANIZATION OF MODEL REORG ACQUISITIONS, LLC
AND ITS AFFILIATED DEBTORS AND DEBTORS IN POSSESSION**

**IMPAIRED CLAIMS; DEEMED REJECTING**

TO: ALL HOLDERS OF CLAIMS AND INTERESTS IN CLASSES 9 and 10

On August [__], 2017 (the "Petition Date"), the Debtors filed the *Prepackaged Joint Chapter 11 Plan of Reorganization of Model Reorg Acquisitions, LLC and Its Affiliated Debtors and Debtors In Possession* (as may be amended, the "Plan") and accompanying Disclosure Statement for the Plan (the "Disclosure Statement").

In accordance with the terms of the Plan and section 1126(g) of the Bankruptcy Code, holders of Claims or Interests in Class 9 (Interests in Perfumania) and Class 10 (Subordinated 510(b) Claims) are neither receiving nor retaining any property on account of their Claims and Interests in the case of Class 9 (Interests in Perfumania) and Class 10 (Subordinated 510(b) Claims) and, therefore, are conclusively presumed to have rejected the Plan and are not entitled to vote on the Plan.

**You have been sent this notice because you have been identified as a holder of a Claim in Class 9 or 10, and as such, you will receive no distribution, are impaired under the Plan and not entitled to vote on the Plan.**

The accompanying *Notice To Holders Of Interests In Perfumania Of (I) Commencement Of Chapter 11 Cases; (II) Imposition Of Automatic Stay; (III) Hearing To Confirm The Prepackaged Joint Chapter 11 Plan Of Reorganization Of Model Reorg Acquisitions, Llc And Its Affiliated Debtors And Debtors In Possession And Related Matters; And (IV) Option To Receive Releasing Stockholder Consideration* (the " Stockholder Combined Hearing Notice") sets forth important deadlines with respect to the approval of the Plan and how you may obtain a copy of the Plan and Disclosure Statement at no charge to you.

If you have any questions regarding the status of your Claim or wish to obtain additional information, you may contact the Debtors' Claims and Administrative Agent at:

> Epiq Bankruptcy Solutions, LLC
> 777 Third Avenue, 12th Floor
>  New York, NY 10017
> **Telephone Number: (888) 457-6672**
> **International Number: +1 (503) 597-7716**
> tabulation@epiqsystems.com

---

¹  The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Perfumania Holdings, Inc. (7964); Perfumania, Inc. (6340); Magnifique Parfumes and Cosmetics, Inc. (6420); Ten Kesef II, Inc. (1253); Perfumania.com, Inc. (4688); Model Reorg Acquisition, LLC (0318); Northern Group, Inc. (3226); Perfumania Puerto Rico, Inc. (6787); Quality King Fragrance, Inc. (4939); Scents of Worth, Inc. (1732); Jacavi, LLC (6863); Distribution Concepts, LLC (8845); Flowing Velvet, Inc. (7294); Aladdin Fragrances, Inc. (4338); Niche Marketing Group, Inc. (1943); Northern Brands, Inc. (7186); Northern Amenities, Ltd. (5387); Global Duty Free Supply, Inc. (2686); and Perfumers Art, Inc. (6616).  The address of the Debtors' corporate headquarters is 35 Sawgrass Drive, Suite 2, Bellport, New York 11713.

## **EXHIBIT D-1**

**BENEFICIAL OWNER RELEASE OPT-IN FORM**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | : | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| MODEL REORG ACQUISITION, LLC, et al., | : | Case No. 17-11794 (___) |
| | : | |
| Debtors.[1] | : | (Joint Administration Pending) |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## BENEFICIAL OWNER RELEASE OPT-IN FORM

## CLASS 9: INTERESTS IN PERFUMANIA HOLDINGS, INC.

## CUSIP NO. [_____]

## FOR BENEFICIAL OWNERS WHO WISH TO MAKE A
## VOLUNTARY ELECTION TO OPT-IN TO STOCKHOLDER RELEASES
## AND RECEIVE THE RELEASING STOCKHOLDER CONSIDERATION UNDER THE PLAN

This form (the "Release Opt-In Form") is provided to you in connection with the *Prepackaged Joint Chapter 11 Plan Of Reorganization Of Model Reorg Acquisitions, LLC, Perfumania Holdings, Inc. And Their Affiliated Debtors And Debtors In Possession* (as amended, modified or supplemented from time to time, the "Plan")[2] in connection with cases (the "Chapter 11 Cases") commenced by the above-captioned debtors and debtors-in-possession (the "Debtors") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

In order for a beneficial owner ("Beneficial Owner") of Interests in Perfumania Holdings, Inc. ("Perfumania") to make a valid Opt-In election to the Stockholder Release *and receive the Releasing Stockholder Consideration under the Plan*, the Beneficial Owner must (1) arrange to submit its underlying shares via ATOP (as defined below) (contact your Nominee for instructions); and (2) arrange for the Administrative Agent to receive the Stockholder Opt-In Nominee Form.

In order to make a valid Opt-In Election a Beneficial Owner must arrange for its underlying shares to be submitted by its Nominee on or before _____ __, 2017 at 5:00 PM Prevailing Eastern Time (the "Release Opt-In Deadline") in order to segregate its shares and receive the Releasing Stockholder Consideration on the Effective Date, or as soon as reasonably practicable thereafter. *Beneficial Owners must follow the instructions of their Nominee regarding the submission of any Release Opt-In instruction.*

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Perfumania Holdings, Inc. (7964); Perfumania, Inc. (6340); Magnifique Parfumes and Cosmetics, Inc. (6420); Ten Kesef II, Inc. (1253); Perfumania.com, Inc. (4688); Model Reorg Acquisition, LLC (0318); Northern Group, Inc. (3226); Perfumania Puerto Rico, Inc. (6787); Quality King Fragrance, Inc. (4939); Scents of Worth, Inc. (1732); Jacavi, LLC (6863); Distribution Concepts, LLC (8845); Flowing Velvet, Inc. (7294); Aladdin Fragrances, Inc. (4338); Niche Marketing Group, Inc. (1943); Northern Brands, Inc. (7186); Northern Amenities, Ltd. (5387); Global Duty Free Supply, Inc. (2686); and Perfumers Art, Inc. (6616).  The address of the Debtors' corporate headquarters is 35 Sawgrass Drive, Suite 2, Bellport, New York 11713.

[2]    Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to such terms in the Plan.

**IMPORTANT NOTICE REGARDING TREATMENT FOR CLASS 9 AND THE STOCKHOLDER RELEASE**

As described in more detail in the Plan[3], on the Effective Date, all Class 9 Interests in Perfumania shall be canceled and shall be of no further force and effect, whether surrendered for cancellation or otherwise. Holders of Interests in Perfumania have the opportunity to receive consideration in the amount of $2.00 per share (the "Releasing Stockholder Consideration") in exchange for providing a Stockholder Release. The Stockholder Release is set forth in Article 9.5 and provides as follows: **As of the Effective Date, each of the Releasing Stockholders, in consideration for the Releasing Stockholder Consideration, and other contracts, instruments, releases, agreements or documents executed and delivered in connection with this Plan, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, waived and discharged the Released Parties from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims, purportedly asserted or assertable on behalf of the Debtors, the Reorganized Debtors, their Estates, and their Affiliates, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, contingent or non-contingent, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, fraud, contract, violations of federal or state securities laws or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or in any way relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring, the Chapter 11 Cases, the DIP Facility, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors provided under any applicable law, rule, or regulation, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual agreements between any Debtor, Reorganized Debtor, Estate or Affiliate and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the DIP Credit Agreement, the Plan, the Disclosure Statement, the Plan Supplement, the Exit Revolver Facility Credit Agreement, any other Plan Transaction Document, or related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date of the Plan. Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or assumed by the Debtors.**

---

[3]    The statements contained herein are summaries of the provisions contained in the Plan and do not purport to be precise or complete statements of all the terms and provisions of the Plan or documents referred to therein. To the extent of any inconsistency between these statements and the Plan, or between the Disclosure Statement and the Plan, the Plan shall control.

**IF YOU WOULD LIKE TO *RECEIVE THE RELEASING STOCKHOLDER CONSIDERATION* ON THE *EFFECTIVE DATE, OR AS SOON AS REASONABLY PRACTICABLE THEREAFTER*, ANY INSTRUCTION TO SUBMIT YOUR SHARES IN CONNECTION WITH AN ELECTION TO OPT-IN TO THE STOCKHOLDER RELEASE PROVISION IN ARTICLE 9.5 OF THE PLAN, MUST BE SUBMITTED BY YOUR NOMINEE ON YOUR BEHALF ON OR BEFORE THE STOCKHOLDER RELEASE OPT-IN DEADLINE AND YOUR NOMINEE MUST COMPLETE ON YOUR BEHALF THE STEPS SET FORTH IN THE INSTRUCTIONS ON THE RELEASE OPT-IN BY THE RELEASE OPT-IN DEADLINE. DO NOT RETURN THIS FORM TO ANYONE OTHER THAN YOUR NOMINEE. YOU MUST FOLLOW THE DIRECTIONS OF YOUR NOMINEE WITH RESPECT TO THE SUBMISSION OF ANY ELECTION TO OPT-IN TO THE RELEASES.**

**AFTER A VALID RELEASE OPT-IN ELECTION HAS BEEN EFFECTED ON BEHALF OF A HOLDER OF INTERESTS IN PERFUMANIA, SUCH HOLDER'S INTERESTS IN PERFUMANIA WILL NO LONGER BE TRANSFERABLE, UNLESS THE ELECTION IS WITHDRAWN PRIOR TO THE RELEASE OPT-IN DEADLINE.**

**IF YOU WISH TO OPT-IN TO THE STOCKHOLDER RELEASE AND RECEIVE THE RELEASING STOCKHOLDER CONSIDERATION AND ALL REQUIRED STEPS HAVE NOT BEEN TAKEN BY THE RELEASE OPT-IN DEADLINE, YOU WILL NOT RECEIVE THE RELEASING STOCKHOLDER CONSIDERATION ON, OR AS REASONABLY PRACTICABLE AFTER, THE EFFECTIVE DATE.  AFTER THE EFFECTIVE DATE, THE DEBTORS WILL PROVIDE HOLDERS OF INTERESTS IN PERFUMANIA AN ADDITIONAL OPPORTUNITY TO OPT-IN TO THE STOCKHOLDER RELEASE AND RECEIVE THE RELEASING STOCKHOLDER CONSIDERATION.  HOLDERS OF INTERESTS IN PERFUMANIA WILL BE PROVIDED WITH NOTICE OF SUCH OPPORTUNITY AND INSTRUCTIONS FOR PARTICIPATION AFTER THE EFFECTIVE DATE HAS OCCURRED.**

If you do not have a copy of the Plan or any other document filed in the Chapter 11 Cases (including the Disclosure Statement), you may obtain a copy from the Debtors' claims and administrative agent, Epiq Bankruptcy Solutions, LLC (the "**Administrative Agent**"), at http://dm.epiq11.com/Perfumania. Copies of the Plan and Disclosure Statement may also be obtained by calling the Administrative Agent at (888) 457-6672 (domestic) or +1 (503) 597-7716 (international toll free). You may wish to seek independent legal advice concerning the Plan and the classification and treatment of your Interest(s) under the Plan

**Instructions**

Beneficial Owners of Interests in Perfumania that are held through The Depository Trust Company ("DTC") and who wish to opt-in to the Stockholder Release must arrange for their bank, broker, or other nominee (each, a "Nominee") to electronically deliver their instruction to opt-in to the Release ("Electronic Opt-In") in accordance with DTC's procedures, as set forth herein. A Release Opt-In or other instruction must not be delivered to the Debtors or the Debtors' claims and administrative agent, Epiq Bankruptcy Solutions, LLC (the "Administrative Agent"). For the Electronic Opt-In to be effective with respect to a Holder's Interests in Perfumania, the Electronic Opt-In instruction must be submitted by a Nominee so as to be received by the Administrative Agent by the relevant deadlines, including (1) the submission of the underlying Interests via the DTC Automated Tender Offer Program ("ATOP") system[4] by the Release Opt-In Deadline by the DTC participant holding the Interest, and (2) receipt of the Stockholder Opt-In Nominee Form within one business day of the Release Opt-In Deadline. If an Electronic Opt-In is delivered in accordance with the instructions set forth herein, you will receive the Releasing Stockholder Consideration on the Effective Date of the Plan, or as soon as reasonably practicable thereafter.

**Any Beneficial Owner whose Interests in Perfumania are held through a broker, dealer, commercial bank, trust company or other Nominee and who wishes to opt-in to the Release and receive the Releasing Stockholder Consideration should contact their Nominee promptly and instruct such Nominee to deliver an Electronic Opt-In on its behalf.**

The Administrative Agent has conferred with DTC with respect to an Electronic Opt-In event, and anticipates that the election to opt-in to the Stockholder Release and receive the Releasing Stockholder Consideration will be eligible for the DTC ATOP system. Accordingly, Beneficial Owners that would like to opt-in to the Stockholder Release and receive the Releasing Stockholder Consideration must arrange to have their Nominees electronically deliver the Electronic Opt-In by causing the transfer of their Interests in Perfumania into a segregated account established by the Administrative Agent for purposes of this Electronic Opt-In event in accordance with DTC's ATOP procedures for such a transfer. By making such a transfer, the Beneficial Owner will be deemed to have delivered an Electronic Opt-In with respect to any Interests in Perfumania so transferred, subject to the requirement of the Nominee to provide a Stockholder Opt-In Nominee Form to confirm the identity of each Beneficial Owner participating in the Electronic Opt-In event. DTC will verify the transfer and the electronic delivery of such Electronic Opt-In to the Administrative Agent. Beneficial Owners desiring to deliver an Electronic Opt-In prior to the Release Opt-In Deadline must allow sufficient time for their Nominees to complete the ATOP procedures during DTC's normal business hours (contact your Nominee for instructions). Beneficial Owners must instruct their Nominee to transfer all of their Interests in Perfumania through DTC's ATOP procedures into the segregated account and are not permitted to split their position (and to the extent a Beneficial Owner makes any Electronic Opt-In election, such Beneficial Owner shall be deemed to have given the Stockholder Release with respect to any and all Interests held by such Beneficial Owner).

Interests in Perfumania with respect to which an Electronic Opt-In has been validly delivered will be placed in a segregated account at DTC during the period beginning on the date the Electronic Opt-In is effectuated. Upon delivery of an Electronic Opt-In, the Interests in Perfumania subject to such Electronic Opt-In may not be transferred.

---

[4]    Use of the ATOP system is subject to the DTC's agreement.

**If a Nominee does not have adequate time to process an instruction, your Electronic Opt-In will not be given effect and you will not receive the Releasing Stockholder Consideration on, or as soon as reasonably practicable after, the Effective Date. Follow the directions provided by your Nominee.**

All questions as to the validity, form, eligibility (including time of receipt), and acceptance and revocation of a Release Opt-In election submitted via ATOP will be resolved by the Administrative Agent, in its sole discretion, which resolution shall be final and binding.

If you are completing this Release Opt-In on behalf of an entity, indicate your relationship with such entity and the capacity in which you are signing. In addition, please provide your name and mailing address if different from that set forth in the attached mailing label, or if no such mailing label is attached, to the Release Opt-In. At the Debtors' discretion, you may be requested to provide proof of your authority to complete the Release Opt-In on behalf of the interest holder.

**PLEASE READ THE ATTACHED INFORMATION AND INSTRUCTIONS BEFORE
COMPLETING THIS RELEASE OPT-IN.**

**I.      OPTIONAL RELEASE ELECTION.** If you wish to make the Election to Opt-In to the Stockholder Release and receive the Releasing Stockholder Consideration, check this box to indicate that you elect to consent to the releases contained in Article 9.5 of the Plan and request your Nominee to submit your underlying Class 9 Interests in Perfumania via ATOP (contact your Nominee for instructions). If all steps are not timely taken to make a valid Election to Opt-In of the Stockholder Release, you will not receive the Releasing Stockholder Consideration on the Effective Date. _Beneficial Owners must follow the instructions of their Nominee regarding the submission of any Electronic Opt-In._

☐   The undersigned elects to consent to the releases contained in Article 9.5 of the Plan – and, accordingly, is requesting its Nominee to submit its underlying Class 9 Interests in Perfumania via ATOP. The undersigned understands that in so electing it will receive the Releasing Stockholder Consideration.

**II.      ACKNOWLEDGMENTS.** By signing this Release Opt-In or otherwise following the directions of its Nominee with respect to the Release Opt-In, the Beneficial Owner (or authorized signatory of such Beneficial Owner) acknowledges receipt of information on obtaining or viewing the Plan, the Disclosure Statement, and the other applicable notice materials, and (i) certifies that it was the Beneficial Owner (or is entitled to act on behalf of such Beneficial Owner) of the Interests in Perfumania to which this form relates, and such Beneficial Owner authorizes its Nominee to submit the Interests in Perfumania held by the Beneficial Owner via the ATOP system and to provide the name of the Beneficial Owner in the Stockholder Opt-In Nominee Form; (ii) acknowledges that any such Interests in Perfumania will thereafter no longer be transferable; (iii) acknowledges it has consented to the Stockholder Release contained in Article 9.5 of the Plan; and (iv) acknowledges that all authority conferred or agreed to be conferred pursuant to this Release Opt-In Form, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

Name of Beneficial Owner: _____

Signature: _____

Print or Type Name of Signer: _____

Title (if appropriate): _____

Address: _____

Telephone Number: _____

Date: _____

6

**Instructions**

In order for a Beneficial Owner of Interests in Perfumania to make a valid Opt-In election *and receive the Releasing Stockholder Consideration,* the Beneficial Owner must arrange for its Nominee to timely:

(1) submit its underlying shares through an Electronic Opt-In instruction; and

(2) submit the Stockholder Opt-In Nominee Form to the Administrative Agent, which will permit the Administrative Agent to identify each Beneficial Owner providing the Stockholder Release.

The Stockholder Opt-In Nominee Form will separately be provided to Nominees.

**EXHIBIT D-2**

**REGISTERED OWNER RELEASE OPT-IN FORM**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
In re:                                                         :    Chapter 11
                                                               :
MODEL REORG ACQUISITION, LLC, et al.,     :    Case No. 17-11794 (___)
                                                               :
               Debtors.[1]                                    :    (Joint Administration Pending)
                                                               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## REGISTERED OWNER RELEASE OPT-IN FORM

## CLASS 9: INTERESTS IN PERFUMANIA HOLDINGS, INC.

## CUSIP NO. [_____]

## FOR REGISTERED OWNERS WHO WISH TO MAKE A
## VOLUNTARY ELECTION TO OPT-IN TO STOCKHOLDER RELEASES
## AND RECEIVE THE RELEASING STOCKHOLDER CONSIDERATION UNDER THE PLAN

This form (the "Release Opt-In Form") is provided to you in connection with the *Prepackaged Joint Chapter 11 Plan Of Reorganization Of Model Reorg Acquisitions, LLC, Perfumania Holdings, Inc. And Their Affiliated Debtors And Debtors In Possession* (as amended, modified or supplemented from time to time, the "Plan")[2] in connection with cases (the "Chapter 11 Cases") commenced by the above-captioned debtors and debtors-in-possession (the "Debtors") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

In order for a registered owner ("Registered Owner") of Interests in Perfumania Holdings, Inc. ("Perfumania") to make a valid Opt-In election to the Stockholder Release *and receive the Releasing Stockholder Consideration under the Plan*, the Registered Owner must complete and duly execute the Release Opt-In Form and submit it to the Administrative Agent.

In order to make a valid Opt-In election a Registered Owner must submit the Release Opt-In Form so that it is actually received by the Administrative Agent on or before _____ __, 2017 at 5:00 PM Prevailing Eastern Time (the "Release Opt-In Deadline") in order to receive the Releasing Stockholder Consideration on the Effective Date, or as soon as reasonably practicable thereafter. The Administrative Agent will continue to accept executed Release Opt-In Forms that are received on or before _____ __, 2018 at 5:00 PM

---

[1]   The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Perfumania Holdings, Inc. (7964); Perfumania, Inc. (6340); Magnifique Parfumes and Cosmetics, Inc. (6420); Ten Kesef II, Inc. (1253); Perfumania.com, Inc. (4688); Model Reorg Acquisition, LLC (0318); Northern Group, Inc. (3226); Perfumania Puerto Rico, Inc. (6787); Quality King Fragrance, Inc. (4939); Scents of Worth, Inc. (1732); Jacavi, LLC (6863); Distribution Concepts, LLC (8845); Flowing Velvet, Inc. (7294); Aladdin Fragrances, Inc. (4338); Niche Marketing Group, Inc. (1943); Northern Brands, Inc. (7186); Northern Amenities, Ltd. (5387); Global Duty Free Supply, Inc. (2686); and Perfumers Art, Inc. (6616). The address of the Debtors' corporate headquarters is 35 Sawgrass Drive, Suite 2, Bellport, New York 11713.

[2]   Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to such terms in the Plan.

Prevailing Eastern Time (the "Final Opt-In Deadline"), and the Releasing Stockholder Consideration will be distributed to such holders as soon as reasonably practicable after the Final Opt-In Deadline.

---

**IMPORTANT NOTICE REGARDING TREATMENT FOR CLASS 9 AND THE STOCKHOLDER RELEASE**

As described in more detail in the Plan[3], on the Effective Date, all Class 9 Interests in Perfumania shall be canceled and shall be of no further force and effect, whether surrendered for cancellation or otherwise. Holders of Interests in Perfumania have the opportunity to receive consideration in the amount of $2.00 per share (the "Releasing Stockholder Consideration") in exchange for providing a Stockholder Release.  The Stockholder Release is set forth in Article 9.5 and provides as follows: **As of the Effective Date, each of the Releasing Stockholders, in consideration for the Releasing Stockholder Consideration, and other contracts, instruments, releases, agreements or documents executed and delivered in connection with this Plan, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, waived and discharged the Released Parties from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims, purportedly asserted or assertable on behalf of the Debtors, the Reorganized Debtors, their Estates, and their Affiliates, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, contingent or non-contingent, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, fraud, contract, violations of federal or state securities laws or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or in any way relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring, the Chapter 11 Cases, the DIP Facility, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors provided under any applicable law, rule, or regulation, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual agreements between any Debtor, Reorganized Debtor, Estate or Affiliate and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the DIP Credit Agreement, the Plan, the Disclosure Statement, the Plan Supplement, the Exit Revolver Facility Credit Agreement, any other Plan Transaction Document, or related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date of the Plan.  Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or assumed by the Debtors.**

---

[3]    The statements contained herein are summaries of the provisions contained in the Plan and do not purport to be precise or complete statements of all the terms and provisions of the Plan or documents referred to therein. To the extent of any inconsistency between these statements and the Plan, or between the Disclosure Statement and the Plan, the Plan shall control.

**IF YOU WOULD LIKE TO** *RECEIVE THE RELEASING STOCKHOLDER CONSIDERATION* **ON THE** *EFFECTIVE DATE, OR AS SOON AS REASONABLY PRACTICABLE THEREAFTER*, **YOU MUST SUBMIT YOUR RELEASE OPT-IN FORM ELECTING TO OPT-IN TO THE STOCKHOLDER RELEASE PROVISION IN ARTICLE 9.5 OF THE PLAN, ON OR BEFORE THE STOCKHOLDER RELEASE OPT-IN DEADLINE.**

**AFTER AN EXECUTED RELEASE OPT-IN FORM HAS BEEN RECEIVED FROM A REGISTERED HOLDER OF INTERESTS IN PERFUMANIA, SUCH HOLDER'S INTERESTS IN PERFUMANIA WILL NO LONGER BE TRANSFERABLE, UNLESS THE ELECTION IS WITHDRAWN PRIOR TO THE RELEASE OPT-IN DEADLINE.**

**IF YOU WISH TO OPT-IN TO THE STOCKHOLDER RELEASE AND RECEIVE THE RELEASING STOCKHOLDER CONSIDERATION AND ALL REQUIRED STEPS HAVE NOT BEEN TAKEN BY THE RELEASE OPT-IN DEADLINE, YOU WILL NOT RECEIVE THE RELEASING STOCKHOLDER CONSIDERATION ON, OR AS REASONABLY PRACTICABLE AFTER, THE EFFECTIVE DATE. THE ADMINISTRATIVE AGENT WILL CONTINUE TO ACCEPT EXECUTED RELEASE OPT-IN FORMS THAT ARE RECEIVED ON OR BEFORE THE FINAL OPT-IN DEADLINE, AND THE RELEASING STOCKHOLDER CONSIDERATION WILL BE DISTRIBUTED TO SUCH HOLDERS AS SOON AS REASONABLY PRACTICABLE AFTER THE FINAL OPT-IN DEADLINE.**

If you do not have a copy of the Plan or any other document filed in the Chapter 11 Cases (including the Disclosure Statement), you may obtain a copy from the Debtors' claims and administrative agent, Epiq Bankruptcy Solutions, LLC (the "**Administrative Agent**"), at http://dm.epiq11.com/Perfumania. Copies of the Plan and Disclosure Statement may also be obtained by calling the Administrative Agent at (888) 457-6672 (domestic) or +1 (503) 597-7716 (international toll free). You may wish to seek independent legal advice concerning the Plan and the classification and treatment of your Interest(s) under the Plan

---

## Instructions

Registered Owners of Interests in Perfumania who wish to opt-in to the Stockholder Release <u>must</u> deliver a duly executed Release Opt-In Form to the Debtors' claims and administrative agent, Epiq Bankruptcy Solutions, LLC (the "<u>Administrative Agent</u>"), so that the Administrative Agent actually receives the Stockholder Opt-In Form on or before _____ __, 2017 at 5:00 PM Prevailing Eastern Time.

### BY REGULAR MAIL, OVERNIGHT COURIER OR HAND DELIVERY:

Perfumania Opt-In Processing
c/o Epiq Bankruptcy Solutions, LLC
777 3rd Ave, 12th Floor
New York, NY 10017

If the Release Opt-In Form is delivered in accordance with the instructions set forth herein, you will receive the Releasing Stockholder Consideration on the Effective Date of the Plan, or as soon as reasonably practicable thereafter.  **If all required steps have not been taken by _____ __, 2017 at 5:00 PM Prevailing Eastern Time, you will not receive the Releasing Stockholder Consideration on, or as reasonably practicable after, the Effective Date.  The Administrative Agent will continue to accept executed Release Opt-In Forms that are received on or before _____ __, 2017 at 5:00 PM Prevailing Eastern Time (the "<u>Final Opt-In Deadline</u>"), and the Releasing Stockholder Consideration will be distributed to such holders as soon as reasonably practicable after the Final Opt-In Deadline.**

All questions as to the validity, form, eligibility (including time of receipt), and acceptance and revocation of a Release Opt-In election will be resolved by the Administrative Agent, in its sole discretion, which resolution shall be final and binding.

If you are completing this Release Opt-In on behalf of an entity, indicate your relationship with such entity and the capacity in which you are signing. In addition, please provide your name and mailing address if different from that set forth in the attached mailing label, or if no such mailing label is attached, to the Release Opt-In.  At the Debtors' discretion, you may be requested to provide proof of your authority to complete the Release Opt-In on behalf of the interest holder.

**PLEASE READ THE ATTACHED INFORMATION AND INSTRUCTIONS BEFORE COMPLETING THIS RELEASE OPT-IN.**

**I.     OPTIONAL RELEASE ELECTION.** If you wish to make the Election to Opt-In to the Stockholder Release and receive the Releasing Stockholder Consideration, check this box to indicate that you elect to consent to the releases contained in Article 9.5 of the Plan. If all steps are not timely taken to make a valid Election to Opt-In of the Stockholder Release, you will not receive the Releasing Stockholder Consideration on the Effective Date.

☐  The undersigned elects to consent to the releases contained in Article 9.5 of the Plan. The undersigned understands that in so electing it will receive the Releasing Stockholder Consideration.

**II.     ACKNOWLEDGMENTS.** By signing this Release Opt-In Form with respect to the Release Opt-In, the Registered Owner (or authorized signatory of such Registered Owner) acknowledges receipt of information on obtaining or viewing the Plan, the Disclosure Statement, and the other applicable notice materials, and (i) certifies that it was the Registered Owner (or is entitled to act on behalf of such Registered Owner) of the Interests in Perfumania to which this form relates; (ii) acknowledges that any such Interests in Perfumania will thereafter no longer be transferable; (iii) acknowledges it has consented to the Stockholder Release contained in Article 9.5 of the Plan; and (iv) acknowledges that all authority conferred or agreed to be conferred pursuant to this Release Opt-In Form, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

Name of Registered Owner: _____

Signature: _____

Print or Type Name of Signer: _____

Title (if appropriate): _____

Address: _____

Telephone Number: _____

Date: _____

**<u>EXHIBIT E-1</u>**

**COMBINED HEARING NOTICE**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
In re:                                                          :          Chapter 11
                                                                :
MODEL REORG ACQUISITION, LLC, et al., :          Case No. 17-11794 (___)
                                                                :
                                          Debtors.[1]        :          (Joint Administration Pending)
                                                                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**NOTICE OF (I) COMMENCEMENT OF CHAPTER 11 CASES; (II) IMPOSITION OF
AUTOMATIC STAY; AND (III) HEARING TO CONFIRM THE PREPACKAGED
JOINT CHAPTER 11 PLAN OF REORGANIZATION OF MODEL REORG
ACQUISITIONS, LLC AND ITS AFFILIATED DEBTORS AND DEBTORS IN
POSSESSION AND RELATED MATTERS**

<u>**COMMENCEMENT OF THE CASES**</u>

   **PLEASE TAKE NOTICE** that on _____ __, 2017 (the "<u>Petition Date</u>"), Model Reorg Acquisition, LLC, a Delaware limited liability company and its affiliated Debtors (collectively, the "<u>Debtors</u>") filed bankruptcy petitions under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") with the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>"), thereby commencing their chapter 11 cases (collectively, the "<u>Chapter 11 Cases</u>").[2]  The Debtors, their respective addresses, Chapter 11 Case numbers, and their federal tax identification numbers are listed on **Exhibit 1** hereto. You may be a creditor of the Debtors. This notice lists important deadlines.  You may want to consult an attorney to protect your rights.  You will not receive notice of all documents filed in these Chapter 11 Cases. All documents filed with the Bankruptcy Court are available for inspection at the Office of the Clerk of the Bankruptcy Court at 824 Market Street, 3rd Floor, Wilmington, Delaware 19801, or are available at no charge online at http://dm.epiq11.com/perfumania.

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Perfumania Holdings, Inc. (7964); Perfumania, Inc. (6340); Magnifique Parfumes and Cosmetics, Inc. (6420); Ten Kesef II, Inc. (1253); Perfumania.com, Inc. (4688); Model Reorg Acquisition, LLC (0318); Northern Group, Inc. (3226); Perfumania Puerto Rico, Inc. (6787); Quality King Fragrance, Inc. (4939); Scents of Worth, Inc. (1732); Jacavi, LLC (6863); Distribution Concepts, LLC (8845); Flowing Velvet, Inc.  (7294); Aladdin Fragrances, Inc. (4338); Niche Marketing Group, Inc. (1943); Northern Brands, Inc. (7186); Northern Amenities, Ltd. (5387); Global Duty Free Supply, Inc. (2686); and Perfumers Art, Inc. (6616).  The address of the Debtors' corporate headquarters is 35 Sawgrass Drive, Suite 2, Bellport, New York 11713.

[2] Capitalized terms used herein but not otherwise defined herein shall have the meaning ascribed to them in *Prepackaged Joint Chapter 11 Plan of Reorganization of Model Reorg Acquisitions, LLC and Its Affiliated Debtors and Debtors In Possession* (the "<u>Plan</u>").

## NO ENTITLEMENT TO VOTE ON THE PLAN

**In accordance with the terms of the Plan and the Bankruptcy Code, no Holders of any Claims against, or Interest in, the Debtors are entitled to vote on the Plan.   All Holders of such Claims and Interests are either (i) Unimpaired under the Plan, and are therefore presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code, or (ii) not receiving any distribution under the Plan, and are therefore, deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.**

## CREDITORS MAY NOT TAKE CERTAIN ACTIONS

The filing of the Chapter 11 Cases automatically stays certain collection and other actions against the Debtors and the Debtors' property.  If you attempt to collect a debt or take other action in violation of the Bankruptcy Code, you may be penalized. Common examples of prohibited actions include (i) contacting the Debtors to demand repayment, (ii) taking action against the Debtors to collect money owed to creditors or to take property of the Debtors, (iii) terminating or changing the terms of existing contracts or agreements, and (iv) starting or continuing foreclosure actions or repossessions.  A creditor who is considering taking action against the Debtors or the Debtors' property should review section 362 of the Bankruptcy Code and may wish to seek legal advice.  The staff of the Bankruptcy Court's Clerk's Office cannot give legal advice.

## COMBINED HEARING ON THE APPROVAL OF THE DISCLOSURE STATEMENT AND TO CONFIRM THE PREPACKAGED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF MODEL REORG ACQUISITIONS, LLC AND ITS AFFILIATED DEBTORS

On the Petition Date, the Debtors filed the *Prepackaged Joint Chapter 11 Plan of Reorganization of Model Reorg Acquisitions, LLC and Its Affiliated Debtors and Debtors In Possession* (as may be amended, the "Plan").  As noted above, holders of Claims against the Debtors and Holders of Interests in the Debtors are not entitled to vote on the Plan because all classes of Claims and all classes of Interests are either Unimpaired under the Plan, and thus presumed to accept the Plan,  or are receiving no recovery under the Plan and thus deemed to reject the Plan.  Therefore, the Plan may be confirmed by the Bankruptcy Court without the Debtors soliciting votes on the Plan.

The Bankruptcy Court has scheduled a combined hearing (the "Combined Hearing") to (i) approve the adequacy of the Disclosure Statement relating to the Plan (the "Disclosure Statement"), and (ii) confirm the Plan under the Bankruptcy Code, and has established the deadlines and procedures described herein.

## COMBINED HEARING DATE AND TIME

The Combined Hearing will be held at _ _:_ _ _.m. on _____ __, 2017 (Prevailing Eastern Time) before the Honorable [●], United States Bankruptcy Judge for the District of Delaware, in the United States Bankruptcy Court for the District of Delaware, [●] Floor, 824 Market Street, Wilmington, Delaware 19801, at which the Bankruptcy Court will consider: (i) approval of the Disclosure Statement pursuant to section 1125 of the Bankruptcy Code, and (ii)

confirmation of the Plan. The Combined Hearing may be continued from time to time without further notice other than the announcement of the adjourned date(s) at the Combined Hearing, or any continued hearing, or in the agenda for any such hearing.

## OBJECTION DEADLINE AND PROCEDURES

Objections, if any, to (a) the approval of the Disclosure Statement, or (b) confirmation of the Plan must (i) be in writing; (ii) conform to the Bankruptcy Rules and the Local Rules; (iii) state the name of the applicable Debtor, the name of the objecting party and the amount and nature of the Claim of such Entity in each applicable Chapter 11 Case or the amount of Interests held by such Entity in each applicable Chapter 11 Case; (iv) state with particularity the legal and factual bases and nature of any objection to the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection; and (v) be filed, contemporaneously with a proof of service, with the Bankruptcy Court and served so that it is **actually received** no later than _ _:_ _ _.m. on _____ __, 2017 (Prevailing Eastern Time) (the "Objection Deadline") by the parties set forth below: (i) the Debtors, Model Reorg Acquisition, LLC, 35 Sawgrass Drive, Suite 2, Bellport, New York 11713 (Attn: Michael W. Katz; Alfred R. Paliani) ; (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036-6522 (Attn: Lisa Laukitis) and 500 Boylston Street Boston, Massachusetts 02116 (Attn: J. Gregory Milmoe; Raquelle L. Kaye) and One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801 (Attn: Anthony Clark); (iii) Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: Hannah McCollum; Brya Keilson); (iv) counsel to Wells Fargo Bank, National Association, as administrative agent and collateral agent under the Debtors' prepetition Senior Credit Facility and post-petition debtor-in-possession revolving loan facility, Otterbourg, 230 Park Avenue New York, NY 10169-0075, (Attn: Daniel F. Fiorillo; Chad B. Simon); and (v) the Debtors' top twenty (20) largest creditors listed on each of their bankruptcy petitions, or, if any official committee of unsecured creditors has been appointed, counsel to such committee.

**Objections not timely filed and served in the manner set forth above may not be considered and may be overruled.**

## OBTAINING COPIES OF THE DISCLOSURE STATEMENT AND PLAN

Any party in interest wishing to obtain a copy of the Disclosure Statement, the Plan, or other pleadings filed by the Debtors in the Chapter 11 Cases may obtain them online at http://dm.epiq11.com/perfumania or may request such copies at the Debtors' expense by contacting Epiq Bankruptcy Solutions, LLC ("Epiq"), (888) 457-6672 or +1 (503) 597-7716 (international callers). The Plan Supplement will become available on or before _____ __, 2017. Any party in interest wishing to review the Disclosure Statement or the Plan may also review such documents during regular business hours (9:00 a.m. to 4:30 p.m. Eastern time weekdays, except legal holidays) at the Bankruptcy Court, 824 Market Street, 3rd Floor, Wilmington, Delaware 19801.

## BRIEF SUMMARY OF PLAN

The Plan is a "prepackaged" plan of reorganization.  The Plan provides for a comprehensive reorganization of the Debtors that will (i) leave all Allowed Claims Unimpaired, (ii) close underperforming stores and reject unfavorable lease terms to establish a foundation for sustainable long-term growth and to improve the overall returns from the Company's retail footprint going forward, (iii) provide meaningful consideration to Perfumania's stockholders who opt-in to a Stockholder Release, and (iv) issue 100% of Reorganized Perfumania to New HoldCo.  Upon consummation of the Plan, the Debtors will emerge from bankruptcy with what the Debtors believe is a sustainable capital structure.  In short, the Debtors believe that the Plan will leave the reorganized Debtors on sound financial footing and position them for long-term success.

All Claims and Interests, except Administrative Claims and Priority Tax Claims, are classified under the Plan.  The following chart summarizes the treatment provided by the Plan to unclassified Claims and each class of Claims and Interests and indicates the acceptance or rejections of the Plan by each class.

| Class | Claim or Interest | Treatment | Status | Voting Rights |
|---|---|---|---|---|
| Unclassified | Administrative Claims | On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Administrative Claim will (i) be Reinstated, (ii) receive, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim either (a) payment in full in Cash for the unpaid portion of such Allowed Administrative Claim or (b) such other less favorable treatment as agreed to in writing by the Debtors or Reorganized Debtors, as applicable, and such Holder, or (iii) will otherwise be left Unimpaired. | Unimpaired | Not entitled to Vote |
| Unclassified | DIP Facility Claims | Holders of a DIP Facility Claim shall be paid in full in Cash from the proceeds of the Exit Revolver Facility on the Effective Date. | Unimpaired | Not entitled to Vote |

| Class | Claim or Interest | Treatment | Status | Voting Rights |
|---|---|---|---|---|
| Unclassified | Priority Tax Claims | On the Effective Date, or as soon a reasonably practicable thereafter, each Holder of an Allowed Priority Tax Claim shall receive one of the following treatments on account of such Claim: (a) Cash in an amount equal to the amount of such Allowed Priority Tax Claim, (b) Cash in an amount agreed to by the Debtors (or the Reorganized Debtors) and such Holder. | Unimpaired | Not entitled to Vote |
| 1. | Other Priority Claims | On the Effective Date, or as soon as reasonably practicable thereafter, each holder of an Allowed Other Priority Claim shall have its Claim Reinstated. | Unimpaired | Presumed to Accept |
| 2. | Other Secured Claims | On the Effective Date or as soon as practicable thereafter, all secured claims other than DIP Facility Claims shall be assumed or reinstated and paid in full in cash in the ordinary course as such claims become due or shall receive such other treatment as satisfies the requirements of section 1124 of the Bankruptcy Code. | Unimpaired | Presumed to Accept |
| 3. | QKD Note Claims | On the Effective Date, or as soon a reasonably practicable thereafter, each Holder of an Allowed QKD Note Claim shall have its Claim Reinstated. | Unimpaired | Presumed to Accept |
| 4. | Nussdorf Trust Notes Claims | On the Effective Date, or as soon a reasonably practicable thereafter, each Holder of an Allowed Nussdorf Trust Notes Claim shall have its Claim Reinstated. | Unimpaired | Presumed to Accept |

| Class | Claim or Interest | Treatment | Status | Voting Rights |
|---|---|---|---|---|
| 5. | 2004 Note Claims | On the Effective Date, or as soon a reasonably practicable thereafter, each Holder of an Allowed 2004 Note Claim shall have its Claim Reinstated. | Unimpaired | Presumed to Accept |
| 6. | General Unsecured Claims | All general unsecured claims shall be reinstated or paid in full in cash in the allowed amount of the claim or in the ordinary course as such claims become due or receive such other treatment as satisfies the requirements of section 1124 of the Bankruptcy Code. | Unimpaired | Presumed to Accept |
| 7. | Intercompany Claims | On the Effective Date, all Allowed Intercompany Claims held by the Debtors between and among the Debtors and/or any Affiliates of the Debtors shall, at the election of the Debtors or the Reorganized Debtors, as applicable, be either (i) Reinstated, or (ii) released, waived, and discharged. | Unimpaired | Presumed to Accept |
| 8. | Intercompany Interests | On the Effective Date, Allowed Intercompany Interests shall be Reinstated and rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code. | Unimpaired | Presumed to Accept |

| Class | Claim or Interest | Treatment | Status | Voting Rights |
|---|---|---|---|---|
| 9. | Interests in Perfumania | On the Effective Date, all Interests in Perfumania shall be cancelled without further action by the Debtors or Reorganized Debtors and the obligations of the Debtors and Reorganized Debtors thereunder shall be discharged. Holders of Interests in Perfumania shall receive no property under the Plan on account of such Interests. | Impaired | Deemed to Reject |
| 10. | Subordinated 510(b) Claims | Holders of Subordinated 510(b) Claims shall not receive or retain any property under the Plan on account of such Subordinated 510(b) Claims and the obligations of the Debtors and Reorganized Debtors on account of Subordinated 510(b) Claims shall be discharged. | Impaired | Deemed to Reject |

**In addition, the Plan contains the release and injunction provisions set forth on <u>Exhibit 2</u> hereto.**

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Counterparties to Executory Contracts and Unexpired Leases with the Debtors should review **Article VII** of the Plan, set forth in **Exhibit 3** hereto.

**Assumption**: In general, except as listed on the Schedule of Executory Contracts and Unexpired Leases or as otherwise provided in the Plan or other documents entered into in connection with the Plan, as of the Effective Date, the Debtors shall be deemed to have assumed each Executory Contract and Unexpired Lease to which it is a party.  Entry of the Confirmation Order by the Bankruptcy Court will constitute approval of such assumption. **Article 7.3** of the Plan provides that any counterparty to an Executory Contract or Unexpired Lease that wishes to object to such assumption must file and serve an objection thereto so that it is actually received by the Debtors at least seven (7) days prior to the Confirmation Hearing.  Any such counterparty that fails to object timely to the proposed assumption will be deemed to have assented and will be deemed to have forever released and waived any objection to the proposed assumption other than with respect to any alleged Cure amount, which may be asserted at any time, subject to the other terms and conditions of the Plan and any order of the Bankruptcy Court.

**Rejection**: Contemporaneously with the Plan, the Debtors filed a Rejection Motion including a Schedule of Rejected Executory Contracts and Unexpired Leases.  The Debtors will also file the Schedule of Rejected Executory Contracts and Unexpired Leases, including any amendments or modifications thereto, with the Plan Supplement.  The Debtors will continue to perform their respective obligations under any rejected Unexpired Lease through the effective date of such rejection.  The Schedule of Rejected Executory Contracts and Unexpired Leases sets forth the amount of Rejection Damages Claims related to each Executory Contract or Unexpired Lease being rejected.  If a counterparty to an Executory Contract or Unexpired Lease does not dispute the Scheduled amount of its Rejection Damages Claim, such party is not required to file a proof of Claim.  If a counterparty to an Executory Contract or Unexpired Lease disputes the Scheduled amount of its Rejection Damages Claim, or believes it has a Rejection Damages Claim that has not been Scheduled, such counterparty must file a proof of Claim asserting what the counterparty believes is the correct Rejection Damages Claim with the Claims and Administrative Agent within the latest to occur of: (1) 30 days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection or (2) 30 days after the effective date of such rejection set forth in the Schedule of Rejected Executory Contracts or Unexpired Leases (the **"Rejection Bar Date"**).

Counterparties should carefully review the Plan in its entirety, including **Article VII** thereof, as this summary is expressly qualified by the terms of the Plan.

## FILING CLAIMS AGAINST THE DEBTORS

The Bankruptcy Court has not established a deadline for filing proofs of claim at the present time, and the Plan, as currently proposed, does not require that creditors file proofs of

claim to receive the treatment specified under the Plan.  Should the Bankruptcy Court establish a claims bar deadline, you will receiver further notice at such time.   As a result, although creditors may, they are not requested to, file claims at this time.  Should the Bankruptcy Court establish a claims bar deadline, separate notice of the deadlines to file proofs of claim and a proof of claim form will be provided to the Debtors' known creditors.   Should a creditor desire to file a proof of claim at this time, proof of claim forms are available from the Bankruptcy Court's website at www.deb.uscourts.gov.   Also, Epiq is the claims agent in these Chapter 11 Cases and you can obtain a proof of claim form through Epiq's website, http://dm.epiq11.com/perfumania, by contacting Epiq, (888) 457-6672  or +1 (503) 597-7716 (international callers), or by contacting Epiq at epiqteamgreen@epiqsystems.com.  Proofs of claim should be filed with Epiq by following the instructions available on Epiq's website or by contacting Epiq at the number set forth above.

If you have any questions about the status of your claim(s) and/or interest(s), you should contact the Perfumania Call Center, (888) 457-6672  or +1 (503) 597-7716 (international callers).

Dated: Wilmington, Delaware
August __, 2017

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

_____

Anthony W. Clark (I.D. No. 2051)
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
Telephone: (302) 651-3000
Fax: (302) 651-3001

- and -

J. Gregory Milmoe
Raquelle L. Kaye
500 Boylston Street
Boston, Massachusetts 02116
Telephone: (617) 573-4800
Fax: (617) 573-4822

- and -

Lisa Laukitis
Four Times Square
New York, New York 10036-6522
Telephone: (212) 735-3000
Fax: (212) 735-2000

*Proposed Counsel for Debtors and Debtors in Possession*

**EXHIBIT 1**

| Debtor | Address | Case No. | Tax I.D. No. |
|---|---|---|---|
| Perfumania Holdings, Inc. | 35 Sawgrass Drive, Suite 2, Bellport, New York 11713 | 17- | 7964 |
| Perfumania, Inc. | 35 Sawgrass Drive, Suite 2, Bellport, New York 11713 | 17- | 6340 |
| Magnifique Parfumes and Cosmetics, Inc. | 35 Sawgrass Drive, Suite 2, Bellport, New York 11713 | 17- | 6420 |
| Ten Kesef II, Inc. | 35 Sawgrass Drive, Suite 2, Bellport, New York 11713 | 17- | 1253 |
| Perfumania.com, Inc. | 35 Sawgrass Drive, Suite 2, Bellport, New York 11713 | 17- | 4688 |
| Model Reorg Acquisition, LLC | 35 Sawgrass Drive, Suite 2, Bellport, New York 11713 | 17- | 0318 |
| Northern Group, Inc. | 35 Sawgrass Drive, Suite 2, Bellport, New York 11713 | 17- | 3226 |
| Perfumania Puerto Rico, Inc. | 35 Sawgrass Drive, Suite 2, Bellport, New York 11713 | 17- | 6787 |
| Quality King Fragrance, Inc. | 35 Sawgrass Drive, Suite 2, Bellport, New York 11713 | 17- | 4939 |
| Scents of Worth, Inc. | 35 Sawgrass Drive, Suite 2, Bellport, New York 11713 | 17- | 1732 |
| Jacavi, LLC | 35 Sawgrass Drive, Suite 2, Bellport, New York 11713 | 17- | 6863 |
| Distribution Concepts, LLC | 35 Sawgrass Drive, Suite 2, Bellport, New York 11713 | 17- | 8845 |
| Flowing Velvet, Inc. | 35 Sawgrass Drive, Suite 2, Bellport, New York 11713 | 17- | 7294 |
| Aladdin Fragrances, Inc. | 35 Sawgrass Drive, Suite 2, Bellport, New York 11713 | 17- | 4338 |

| | | | |
|---|---|---|---|
| Niche Marketing Group, Inc. | 35 Sawgrass Drive, Suite 2, Bellport, New York 11713 | 17- | 1943 |
| Northern Brands, Inc. | 35 Sawgrass Drive, Suite 2, Bellport, New York 11713 | 17- | 7186 |
| Northern Amenities, Ltd. | 35 Sawgrass Drive, Suite 2, Bellport, New York 11713 | 17- | 5387 |
| Global Duty Free Supply, Inc. | 35 Sawgrass Drive, Suite 2, Bellport, New York 11713 | 17- | 2686 |
| Perfumers Art, Inc. | 35 Sawgrass Drive, Suite 2, Bellport, New York 11713 | 17- | 6616 |

## EXHIBIT 2

## PLAN RELEASES

Article 9.4 of the Plan, entitled "Releases by Debtor" provides:

**Pursuant to section 1123(b) of the Bankruptcy Code for good and valuable consideration, including (i) the service of the Released Parties to facilitate the expeditious reorganization of the Debtors and the implementation of the restructuring contemplated by the Plan, (ii) the contribution of NewHoldCo Equity Infusion to the Reorganized Debtors, (iii) the services of the Debtors', the Non-Debtor Affiliates, and Such Entities' former officers, directors, managers and advisors in facilitating the expeditious implementation of the restructuring contemplated hereby, on and after the Effective Date (such that the Reorganized Debtors will not receive any Claim or Cause of Action released hereunder), the Debtors and their Estates, and the Reorganized Debtors, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, waived and discharged the Released Parties from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, their Estates and their Affiliates, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, contingent or non-contingent, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, fraud, contract, violations of federal or state securities laws or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or in any way relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring, the Chapter 11 Cases, the DIP Facility, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, provided under any applicable law, rule, or regulation, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual agreements between any Debtor, Reorganized Debtor, Estate or Affiliate and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the DIP Credit Agreement, Plan, the Disclosure Statement, the Plan Supplement, the Exit Revolver Facility Credit Agreement, any other Plan Transaction Document, or related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date of the Plan, other than Claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct or gross negligence.  Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.  For the avoidance of doubt, nothing in this paragraph shall in any way affect the operation of <u>Article 9.2</u> of the Plan, pursuant to section 1141(d) of the Bankruptcy Code.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor releases pursuant to this <u>Article 9.4</u>,**

**which includes by reference each of the related provisions and definitions contained herein, and further shall constitute the Bankruptcy Court's finding that such Debtor releases are (i) in exchange for the good and valuable consideration provided by the Released Parties, (ii) a good faith settlement and compromise of the claims released by such Debtor releases, (iii) in the best interests of the Debtors and all holders of Claims and Interests, (iv) fair, equitable and reasonable, (v) given and made after due notice and opportunity for hearing, and (vi) a bar to any of the Debtors or the Reorganized Debtors asserting any Claim or Cause of Action released pursuant to such Debtor releases.**

Article 9.5 of the Plan, entitled "Releases by Releasing Stockholders" provides:

**As of the Effective Date, each of the Releasing Stockholders, in consideration for the Releasing Stockholder Consideration, and other contracts, instruments, releases, agreements or documents executed and delivered in connection with this Plan, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, waived and discharged the Released Parties from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims, purportedly asserted or assertable on behalf of the Debtors, the Reorganized Debtors, their Estates, and their Affiliates, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, contingent or non-contingent, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, fraud, contract, violations of federal or state securities laws or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or in any way relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring, the Chapter 11 Cases, the DIP Facility, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors provided under any applicable law, rule, or regulation, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual agreements between any Debtor, Reorganized Debtor, Estate or Affiliate and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the DIP Credit Agreement, the Plan, the Disclosure Statement, the Plan Supplement, the Exit Revolver Facility Credit Agreement, any other Plan Transaction Document, or related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date of the Plan.  Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or assumed by the Debtors.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Stockholder Release pursuant to this <u>Article 9.5</u>, which includes by reference each of the related provisions and definitions contained herein, and further shall constitute the Bankruptcy Court's finding that such of the releases by the Releasing Stockholders are (i) in exchange for the good and valuable consideration provided by the Released Parties, (ii) a good faith settlement and compromise of the claims**

released by the Releasing Stockholders, (iii) in the best interests of the Debtors and all holders of Claims and Interests, (iv) fair, equitable and reasonable, (v) given and made after due notice and opportunity for hearing, and (vi) a bar to any of the Releasing Stockholders asserting any Claim or Cause of Action released pursuant to such releases.

Article 9.7 of the Plan, entitled "Injunction" provides:

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN, THE PLAN SUPPLEMENT OR RELATED DOCUMENTS, OR FOR OBLIGATIONS ISSUED PURSUANT TO THE PLAN, ALL PERSONS WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE BEEN RELEASED PURSUANT TO **ARTICLES 9.4 or 9.5**, DISCHARGED PURSUANT TO **ARTICLE 9.2**, OR ARE SUBJECT TO EXCULPATION PURSUANT TO **ARTICLE 9.6** ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS:    (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (2) ENFORCING, ATTACHING, COLLECTING OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST SUCH PERSONS ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (3) CREATING, PERFECTING OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH PERSONS OR THE PROPERTY OR ESTATES OF SUCH PERSONS ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; AND (4) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED, SETTLED OR DISCHARGED PURSUANT TO THE PLAN.

THE RIGHTS AFFORDED IN THE PLAN AND THE TREATMENT OF ALL CLAIMS AND INTERESTS HEREIN SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION OF ALL CLAIMS AND INTERESTS OF ANY NATURE WHATSOEVER, INCLUDING ANY INTEREST ACCRUED ON CLAIMS FROM AND AFTER THE PETITION DATE, AGAINST THE DEBTORS OR ANY OF THEIR ASSETS, PROPERTY OR ESTATES.    ON THE EFFECTIVE DATE, ALL SUCH CLAIMS AGAINST THE DEBTORS SHALL BE FULLY RELEASED AND DISCHARGED.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR HEREIN OR IN OBLIGATIONS ISSUED PURSUANT TO THE PLAN FROM AND AFTER THE EFFECTIVE DATE, ALL CLAIMS AGAINST THE DEBTORS SHALL BE FULLY RELEASED AND DISCHARGED, AND ALL INTERESTS SHALL BE CANCELLED, AND THE DEBTORS' LIABILITY WITH RESPECT THERETO SHALL BE EXTINGUISHED COMPLETELY, INCLUDING ANY LIABILITY OF THE KIND SPECIFIED UNDER SECTION 502(G) OF THE BANKRUPTCY CODE.    ALL PERSONS SHALL BE PRECLUDED FROM ASSERTING AGAINST THE DEBTORS, THE DEBTORS' ESTATES, THE REORGANIZED DEBTORS, EACH OF THEIR

**RESPECTIVE SUCCESSORS AND ASSIGNS, AND EACH OF THEIR ASSETS AND PROPERTIES, ANY OTHER CLAIMS OR INTERESTS BASED UPON ANY DOCUMENTS, INSTRUMENTS OR ANY ACT OR OMISSION, TRANSACTION OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED BEFORE THE EFFECTIVE DATE.**

## EXHIBIT 3

## ARTICLE VII

## UNEXPIRED LEASES AND EXECUTORY CONTRACTS

**7.1    Assumption and Rejection of Executory Contracts and Unexpired Leases.**

(a)    Except as otherwise provided herein, each Executory Contract and Unexpired Lease shall be deemed assumed pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless any such Executory Contract or Unexpired Lease: (1) is identified on the Schedule of Rejected Executory Contracts and Unexpired Leases; (2) was assumed or rejected previously by the Debtors; (3) expired or terminated pursuant to its own terms before the Effective Date; (4) is the subject of a motion to reject pending on the Confirmation Date; or (5) is the subject of a motion to reject an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such rejection is after the Effective Date.

(b)    Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the assumptions or rejections of such Executory Contracts or Unexpired Leases as set forth in the Plan, all pursuant to sections 365(a) and 1123 of the Bankruptcy Code. All assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date or the date set forth in the Schedule of Rejected Executory Contracts and Unexpired Leases. The Debtors will continue to perform their respective obligations under any rejected Unexpired Lease through the effective date of such rejection.

(c)    All Assumed Executory Contracts and Unexpired Leases shall remain in full force and effect for the benefit of the Reorganized Debtors, and be enforceable by the Reorganized Debtors in accordance with their terms, notwithstanding any provision in such assumed Executory Contract or Unexpired Lease that prohibits, restricts or conditions such assumption, assignment or transfer. Any provision in the assumed Executory Contracts and Unexpired Leases that purports to declare a breach or default based in whole or in part on commencement or continuance of these Chapter 11 Cases or any successor cases is hereby deemed unenforceable.  To the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan (including, without limitation, any "change of control" provision) restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the Reorganized Debtors' assumption of such Executory Contract or Unexpired Lease, then such provision will be deemed modified such that the transactions contemplated by the Plan will not entitle the non-debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.  Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the applicable contracting Reorganized Debtor in accordance with its terms, except as such terms may have been modified by such order or by applicable law.

(d)    Notwithstanding anything to the contrary in the Plan, the Debtors ,with the consent of New HoldCo (which consent shall not be unreasonably withheld), or the Reorganized Debtors, as applicable, reserve the right to alter, amend, modify or supplement the Schedule of Rejected Executory Contracts and Unexpired Leases identified in the Plan Supplement at any time before the Confirmation Date. After the Confirmation Date, the Reorganized Debtors shall have the right to terminate, amend or modify any intercompany contracts, leases or other agreements without approval of the Bankruptcy Court.

### 7.2    Claims Procedures Related to Rejection of Executory Contracts or Unexpired Leases.

(a)    All Allowed Rejection Damages Claims shall be classified as General Unsecured Claims.

(b)    **Procedures for Rejection Damages Claim Holders that Agree with Scheduled Claim**. Contemporaneously with the Plan, the Debtors filed a Rejection Motion including a Schedule of Rejected Executory Contracts and Unexpired Leases. The Debtors will also file the Schedule of Rejected Executory Contracts and Unexpired Leases, including any amendments or modifications thereto, with the Plan Supplement. These schedules set forth the amount of Rejection Damages Claims related to each Executory Contract or Unexpired Lease being rejected. If a counterparty to an Executory Contract or Unexpired Lease does not dispute the Scheduled amount of its Rejection Damages Claim, such party is not required to file a proof of Claim, and will be deemed to have an Allowed Rejection Damages Claim in the amount set forth on the Debtors' Schedule of Rejected Executory Contracts and Unexpired Leases at the expiration of the Rejection Bar Date. Any holder that disputes the Scheduled amount of its Rejection Damages Claim is required to file a proof of Claim, pursuant to the procedures set forth in this <u>Article VII</u>.

(c)    **Procedures for Rejection Damages Claim Holders that Disagree with Scheduled Claim**. If a counterparty to an Executory Contract or Unexpired Lease disputes the Scheduled amount of its Rejection Damages Claim, or believes it has a Rejection Damages Claim that has not been Scheduled, unless otherwise provided by a Bankruptcy Court order, such counterparty must file a proof of Claim asserting what the counterparty believes is the correct Rejection Damages Claim with the Claims and Administrative Agent within the latest to occur of: (1) 30 days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection or (2) 30 days after the effective date of such rejection set forth in the Schedule of Rejected Executory Contracts or Unexpired Leases (the "<u>Rejection Bar Date</u>"). **Any Entity that disputes the Scheduled amount of its Rejection Damages Claim is required to file a proof of Claim asserting a Rejection Damages Claim and failure to do so on or before the applicable Rejection Bar Date shall result in any Rejection Damages Claim in excess of the Scheduled amount being disallowed automatically and forever barred, estopped, and enjoined from assertion and any such Rejection Damages Claim in excess of the Scheduled amount shall not be enforceable against the Debtors or the Reorganized Debtors, without the need for any objection by the Reorganized Debtors or any further notice to or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and**

discharged, notwithstanding a proof of Claim to the contrary.  In addition, any Entity that believes it has a Rejection Damages Claim that has not been Scheduled is required to file a proof of Claim asserting a Rejection Damages Claim and failure to do so on or before the applicable Rejection Bar Date shall result in any Rejection Damages Claim being disallowed automatically and forever barred, estopped, and enjoined from assertion and any such Rejection Damages Claim shall not be enforceable against the Debtors or the Reorganized Debtors, without the need for any objection by the Reorganized Debtors or any further notice to or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding a proof of Claim to the contrary.

(d)  **Time to File Objections**. Any objections to proofs of Claim asserting Rejection Damages Claims shall be filed on or before the Rejection Damages Claim Objection Deadline.

(e)  **No Distributions Pending Allowance**.  If an objection to a proof of Claim asserting a Rejection Damages Claim, or portion thereof, is filed on or before the Rejection Damages Claim Objection Deadline, no payment or distribution provided under the Plan shall be made on account of such Rejection Damages Claim, or portion thereof, unless and until such Disputed Rejection Damages Claim becomes an Allowed Claim, unless otherwise determined by the Reorganized Debtors.  If an objection to a proof Claim asserting a Rejection Damages Claim is not filed by the Rejection Damages Claim Objection Deadline, such Claim shall become an Allowed Rejection Damages Claim in the amount asserted in such proof of Claim upon the expiration of the Rejection Damages Claim Objection Deadline.

**7.3**  **Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.**

(a)  Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan will be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash as and when due in the ordinary course or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.

(b)  Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption must be filed, served, and actually received by the Debtors at least seven (7) days prior to the Confirmation Hearing.  Any counterparty to an Executory Contract and Unexpired Lease that fails to object timely to the proposed assumption will be deemed to have assented and will be deemed to have forever released and waived any objection to the proposed assumption other than with respect to any alleged Cure amount, which may be asserted at any time.  In the event of a dispute regarding (1) the amount of any payments to Cure a default, (2) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed or (3) any other matter pertaining to assumption, the Cure payments required by section 365(b)(1) of the Bankruptcy Code will be made following the entry of a Final Order or orders resolving the dispute and approving the assumption.  If an

objection to Cure is sustained by the Bankruptcy Court, the Debtors or Reorganized Debtors, as applicable, in their sole option, may elect to reject such Executory Contract or Unexpired Lease in lieu of assuming it.

(c)    Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the effective date of the assumption.

7.4    **Insurance Policies**.  Notwithstanding anything herein to the contrary, as of the Effective Date, the Debtors shall assume (and assign to the Reorganized Debtors if necessary to continue the Insurance Policies in full force) all of the Insurance Policies pursuant to section 365(a) of the Bankruptcy Code and may provide an extended discovery period for the D&O Liability Insurance Policies.  Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtors' foregoing assumption of each of the Insurance Policies.

7.5    **Modifications, Amendments, Supplements, Restatements, or Other Agreements.**  Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated pursuant hereunder.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

7.6    **Contracts and Leases Entered into After the Petition Date**.  Contracts and leases entered into after the Petition Date by the Debtors, and any Executory Contracts and Unexpired Leases assumed by the Debtors, may be performed by the Reorganized Debtors in the ordinary course of business and in accordance with the terms thereof.

7.7    **General Reservation of Rights**.  Neither the exclusion nor inclusion of any contract or lease on the Schedule of Rejected Executory Contracts and Unexpired Leases, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Reorganized Debtors, or any of their Affiliates, has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Reorganized Debtors, as applicable, shall have 45 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

**EXHIBIT E-2**

**STOCKHOLDER COMBINED HEARING NOTICE**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                :

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| MODEL REORG ACQUISITION, LLC, <u>et al.</u>, | : | Case No. 17-11794 (___) |
|  | : |  |
| Debtors.[1] | : | (Joint Administration Pending) |
|  | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**NOTICE TO HOLDERS OF INTERESTS IN PERFUMANIA HOLDINGS, INC. OF
(I) COMMENCEMENT OF CHAPTER 11 CASES; (II) IMPOSITION OF AUTOMATIC
STAY; (III) HEARING TO CONFIRM THE PREPACKAGED JOINT CHAPTER 11
PLAN OF REORGANIZATION OF MODEL REORG ACQUISITIONS, LLC AND ITS
AFFILIATED DEBTORS AND DEBTORS IN POSSESSION AND RELATED
MATTERS; AND (IV) OPTION TO RECEIVE
RELEASING STOCKHOLDER CONSIDERATION**

<u>**COMMENCEMENT OF THE CASES**</u>

      **PLEASE TAKE NOTICE** that on _____ __, 2017 (the "<u>Petition Date</u>"), Model Reorg Acquisition, LLC, a Delaware limited liability company and its affiliated Debtors (collectively, the "<u>Debtors</u>") filed bankruptcy petitions under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") with the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>"), thereby commencing their chapter 11 cases (collectively, the "<u>Chapter 11 Cases</u>").  The Debtors, their respective addresses, Chapter 11 Case numbers, and their federal tax identification numbers are listed on **Exhibit 1** hereto. You may be a creditor of the Debtors. This notice lists important deadlines.  You may want to consult an attorney to protect your rights.  You will not receive notice of all documents filed in these Chapter 11 Cases. All documents filed with the Bankruptcy Court are available for inspection at the Office of the Clerk of the Bankruptcy Court at 824 Market Street, 3rd Floor, Wilmington, Delaware 19801, or are available at no charge online at http://dm.epiq11.com/perfumania.

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Perfumania Holdings, Inc. (7964); Perfumania, Inc. (6340); Magnifique Parfumes and Cosmetics, Inc. (6420); Ten Kesef II, Inc. (1253); Perfumania.com, Inc. (4688); Model Reorg Acquisition, LLC (0318); Northern Group, Inc. (3226); Perfumania Puerto Rico, Inc. (6787); Quality King Fragrance, Inc. (4939); Scents of Worth, Inc. (1732); Jacavi, LLC (6863); Distribution Concepts, LLC (8845); Flowing Velvet, Inc.  (7294); Aladdin Fragrances, Inc. (4338); Niche Marketing Group, Inc. (1943); Northern Brands, Inc. (7186); Northern Amenities, Ltd. (5387); Global Duty Free Supply, Inc. (2686); and Perfumers Art, Inc. (6616).  The address of the Debtors' corporate headquarters is 35 Sawgrass Drive, Suite 2, Bellport, New York 11713.

## OPTION TO RECEIVE RELEASING STOCKHOLDER CONSIDERATION

**In accordance with the terms of the Plan and the Bankruptcy Code, all Interests in Perfumania Holdings, Inc. ("__Perfumania__") shall be cancelled on the Effective Date of the Plan.**[2]  **Holders of Interests in Perfumania are not entitled to vote on the Plan because they will not receive or retain any property under the Plan on account of such Interests, and are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.**

**Each Holder of an Interest in Perfumania shall have the opportunity to receive $2.00 per share consideration in exchange for granting the Stockholder Release, which is set forth below and in __Article 9.5__ of the Plan.**

Article 9.5 of the Plan, entitled "Releases by Releasing Stockholders" provides:

**As of the Effective Date, each of the Releasing Stockholders, in consideration for the Releasing Stockholder Consideration, and other contracts, instruments, releases, agreements or documents executed and delivered in connection with this Plan, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, waived and discharged the Released Parties from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims, purportedly asserted or assertable on behalf of the Debtors, the Reorganized Debtors, their Estates, and their Affiliates, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, contingent or non-contingent, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, fraud, contract, violations of federal or state securities laws or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or in any way relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring, the Chapter 11 Cases, the DIP Facility, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors provided under any applicable law, rule, or regulation, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual agreements between any Debtor, Reorganized Debtor, Estate or Affiliate and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the DIP Credit Agreement, the Plan, the Disclosure Statement, the Plan Supplement, the Exit Revolver Facility Credit Agreement, any other Plan Transaction Document, or related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before**

---

[2]    Capitalized terms used herein but not otherwise defined herein shall have the meaning ascribed to them in *Prepackaged Joint Chapter 11 Plan Of Reorganization Of Model Reorg Acquisitions, LLC, Perfumania Holdings, Inc. And Their Affiliated Debtors And Debtors In Possession* (the "__Plan__").

**the Effective Date of the Plan. Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or assumed by the Debtors.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Stockholder Release pursuant to this Article 9.5, which includes by reference each of the related provisions and definitions contained herein, and further shall constitute the Bankruptcy Court's finding that such of the releases by the Releasing Stockholders are (i) in exchange for the good and valuable consideration provided by the Released Parties, (ii) a good faith settlement and compromise of the claims released by the Releasing Stockholders, (iii) in the best interests of the Debtors and all holders of Claims and Interests, (iv) fair, equitable and reasonable, (v) given and made after due notice and opportunity for hearing, and (vi) a bar to any of the Releasing Stockholders asserting any Claim or Cause of Action released pursuant to such releases.**

Holders of Interests in Perfumania should carefully review the Plan in its entirety, including Articles III, VII, and IX thereof, as this summary is expressly qualified by the terms of the Plan; and the instructions provided in the Stockholder Release Form and in the Disclosure Statement.

In order to opt-in to the Stockholder Release and receive the Releasing Stockholder Consideration, Holders of Interests in Perfumania must follow the instructions included on the Beneficial Owner Release Opt-In Form or the Registered Owner Release Opt-In Form.

**IF YOU WOULD LIKE TO RECEIVE THE RELEASING STOCKHOLDER CONSIDERATION ON THE EFFECTIVE DATE, OR AS SOON AS REASONABLY PRACTICABLE THEREAFTER, YOU MUST COMPLETE THE STEPS, OR ARRANGE FOR YOUR NOMINEE TO COMPLETE THE STEPS TO SUBMIT YOUR SHARES IN CONNECTION WITH AN ELECTION TO OPT-IN TO THE STOCKHOLDER RELEASE ON OR BEFORE THE STOCKHOLDER RELEASE OPT-IN DEADLINE. IF YOU ARE A BENEFICIAL OWNER YOU MUST FOLLOW THE DIRECTIONS OF YOUR NOMINEE WITH RESPECT TO THE SUBMISSION OF ANY ELECTION TO OPT-IN TO THE RELEASES.**

**AFTER A VALID RELEASE OPT-IN ELECTION HAS BEEN EFFECTED ON BEHALF OF A HOLDER OF INTERESTS IN PERFUMANIA, SUCH HOLDER'S INTERESTS IN PERFUMANIA WILL NO LONGER BE TRANSFERABLE, UNLESS THE ELECTION IS WITHDRAWN PRIOR TO THE RELEASE OPT-IN DEADLINE.**

**IF YOU WISH TO OPT-IN TO THE STOCKHOLDER RELEASE AND RECEIVE THE RELEASING STOCKHOLDER CONSIDERATION AND ALL REQUIRED STEPS HAVE NOT BEEN TAKEN BY THE RELEASE OPT-IN**

**DEADLINE, YOU WILL NOT RECEIVE THE RELEASING STOCKHOLDER CONSIDERATION ON, OR AS REASONABLY PRACTICABLE AFTER, THE EFFECTIVE DATE.  AFTER THE EFFECTIVE DATE, THE DEBTORS WILL PROVIDE HOLDERS OF INTERESTS IN PERFUMANIA AN ADDITIONAL OPPORTUNITY TO OPT-IN TO THE STOCKHOLDER RELEASE AND RECEIVE THE RELEASING STOCKHOLDER CONSIDERATION.  HOLDERS OF INTERESTS IN PERFUMANIA WILL BE PROVIDED WITH NOTICE OF SUCH OPPORTUNITY AND INSTRUCTIONS FOR PARTICIPATION AFTER THE EFFECTIVE DATE HAS OCCURRED.**

If you have questions regarding the process for opting-in to the Stockholder Release in order to receive the Releasing Stockholder Consideration you should contact the Administrative Agent at (888) 457-6672 (domestic) or +1 (503) 597-7716 (international toll free).

<u>**CREDITORS MAY NOT TAKE CERTAIN ACTIONS**</u>

The filing of the Chapter 11 Cases automatically stays certain collection and other actions against the Debtors and the Debtors' property.  If you attempt to collect a debt or take other action in violation of the Bankruptcy Code, you may be penalized. Common examples of prohibited actions include (i) contacting the Debtors to demand repayment, (ii) taking action against the Debtors to collect money owed to creditors or to take property of the Debtors, (iii) terminating or changing the terms of existing contracts or agreements, and (iv) starting or continuing foreclosure actions or repossessions.  A creditor who is considering taking action against the Debtors or the Debtors' property should review section 362 of the Bankruptcy Code and may wish to seek legal advice.  <u>The staff of the Bankruptcy Court's Clerk's Office cannot give legal advice.</u>

<u>**COMBINED HEARING ON THE APPROVAL OF THE DISCLOSURE STATEMENT AND TO CONFIRM THE PREPACKAGED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF  MODEL REORG ACQUISITIONS, LLC, PERFUMANIA HOLDINGS, INC. AND THEIR AFFILIATED DEBTORS AND DEBTORS IN POSSESSION**</u>

On the Petition Date, the Debtors filed the *Prepackaged Joint Chapter 11 Plan Of Reorganization Of  Model Reorg Acquisitions, LLC, Perfumania Holdings, Inc. And Their Affiliated Debtors And Debtors In Possession* (as may be amended, the "<u>Plan</u>").  As noted above, holders of Claims against the Debtors and Holders of Interests in the Debtors are not entitled to vote on the Plan because all classes of Claims and all classes of Interests are either Unimpaired under the Plan, and thus presumed to accept the Plan,  or are receiving no recovery under the Plan and thus deemed to reject the Plan.  Therefore, the Plan may be confirmed by the Bankruptcy Court without the Debtors soliciting votes on the Plan.

The Bankruptcy Court has scheduled a combined hearing (the "<u>Combined Hearing</u>") to (i) approve the adequacy of the Disclosure Statement relating to the Plan (the "<u>Disclosure Statement</u>"), and (ii) confirm the Plan under the Bankruptcy Code, and has established the deadlines and procedures described herein.

## COMBINED HEARING DATE AND TIME

The Combined Hearing will be held at _ _:_ _ _.m. on _____ __, 2017 (Prevailing Eastern Time) before the Honorable [●], United States Bankruptcy Judge for the District of Delaware, in the United States Bankruptcy Court for the District of Delaware, [●] Floor, 824 Market Street, Wilmington, Delaware 19801, at which the Bankruptcy Court will consider: (i) approval of the Disclosure Statement pursuant to section 1125 of the Bankruptcy Code, and (ii) confirmation of the Plan. The Combined Hearing may be continued from time to time without further notice other than the announcement of the adjourned date(s) at the Combined Hearing, or any continued hearing, or in the agenda for any such hearing.

## OBJECTION DEADLINE AND PROCEDURES

Objections, if any, to (a) the approval of the Disclosure Statement, or (b) confirmation of the Plan must (i) be in writing; (ii) conform to the Bankruptcy Rules and the Local Rules; (iii) state the name of the applicable Debtor, the name of the objecting party and the amount and nature of the Claim of such Entity in each applicable Chapter 11 Case or the amount of Interests held by such Entity in each applicable Chapter 11 Case; (iv) state with particularity the legal and factual bases and nature of any objection to the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection; and (v) be filed, contemporaneously with a proof of service, with the Bankruptcy Court and served so that it is **actually received** no later than _ _:_ _ _.m. on _____ __, 2017 (Prevailing Eastern Time) (the "Objection Deadline") by the parties set forth below: (i) the Debtors, Model Reorg Acquisition, LLC, 35 Sawgrass Drive, Suite 2, Bellport, New York 11713 (Attn: Michael W. Katz; Alfred R. Paliani) ; (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036-6522 (Attn: Lisa Laukitis) and 500 Boylston Street Boston, Massachusetts 02116 (Attn: J. Gregory Milmoe; Raquelle L. Kaye) and One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801 (Attn: Anthony Clark); (iii) Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: Hannah McCollum; Brya Keilson); (iv) counsel to Wells Fargo Bank, National Association, as administrative agent and collateral agent under the Debtors' prepetition Senior Credit Facility and post-petition debtor-in-possession revolving loan facility, Otterbourg, 230 Park Avenue New York, NY 10169-0075, (Attn: Daniel F. Fiorillo; Chad B. Simon); and (v) the Debtors' top twenty (20) largest creditors listed on each of their bankruptcy petitions, or, if any official committee of unsecured creditors has been appointed, counsel to such committee.

**Objections not timely filed and served in the manner set forth above may not be considered and may be overruled.**

## OBTAINING COPIES OF THE DISCLOSURE STATEMENT AND PLAN

Any party in interest wishing to obtain a copy of the Disclosure Statement, the Plan, or other pleadings filed by the Debtors in the Chapter 11 Cases may obtain them online at [http://dm.epiq11.com/perfumania] or may request such copies at the Debtors' expense by contacting Epiq Bankruptcy Solutions, LLC ("Epiq"), (888) 457-6672 or +1 (503) 597-7716 (international callers). The Plan Supplement will become available on or before _____

__, 2017.  Any party in interest wishing to review the Disclosure Statement or the Plan may also review such documents during regular business hours (9:00 a.m. to 4:30 p.m. Eastern time weekdays, except legal holidays) at the Bankruptcy Court, 824 Market Street, 3rd Floor, Wilmington, Delaware 19801.

## BRIEF SUMMARY OF PLAN

The Plan is a "prepackaged" plan of reorganization.  The Plan provides for a comprehensive reorganization of the Debtors that will (i) leave all Allowed Claims Unimpaired, (ii) close underperforming stores and reject unfavorable lease terms to establish a foundation for sustainable long-term growth and to improve the overall returns from the Company's retail footprint going forward, (iii) provide meaningful consideration to Perfumania's stockholders who opt-in to a Stockholder Release, and (iv) issue 100% of Reorganized Perfumania to New HoldCo.  Upon consummation of the Plan, the Debtors will emerge from bankruptcy with what the Debtors believe is a sustainable capital structure.  In short, the Debtors believe that the Plan will leave the reorganized Debtors on sound financial footing and position them for long-term success.

All Claims and Interests, except Administrative Claims and Priority Tax Claims, are classified under the Plan.  The following chart summarizes the treatment provided by the Plan to unclassified Claims and each class of Claims and Interests and indicates the acceptance or rejections of the Plan by each class.

| Class | Claim or Interest | Treatment | Status | Voting Rights |
|---|---|---|---|---|
| Unclassified | Administrative Claims | On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Administrative Claim will (i) be Reinstated, (ii) receive, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim either (a) payment in full in Cash for the unpaid portion of such Allowed Administrative Claim or (b) such other less favorable treatment as agreed to in writing by the Debtors or Reorganized Debtors, as applicable, and such Holder, or (iii) will otherwise be left Unimpaired. | Unimpaired | Not entitled to Vote |

| Class | Claim or Interest | Treatment | Status | Voting Rights |
|---|---|---|---|---|
| Unclassified | DIP Facility Claims | Holders of a DIP Facility Claim shall be paid in full in Cash from the proceeds of the Exit Revolver Facility on the Effective Date. | Unimpaired | Not entitled to Vote |
| Unclassified | Priority Tax Claims | On the Effective Date, or as soon a reasonably practicable thereafter, each Holder of an Allowed Priority Tax Claim shall receive one of the following treatments on account of such Claim: (a) Cash in an amount equal to the amount of such Allowed Priority Tax Claim, (b) Cash in an amount agreed to by the Debtors (or the Reorganized Debtors) and such Holder. | Unimpaired | Not entitled to Vote |
| 1. | Other Priority Claims | On the Effective Date, or as soon as reasonably practicable thereafter, each holder of an Allowed Other Priority Claim shall have its Claim Reinstated. | Unimpaired | Presumed to Accept |
| 2. | Other Secured Claims | On the Effective Date or as soon as practicable thereafter, all secured claims other than DIP Facility Claims shall be assumed or reinstated and paid in full in cash in the ordinary course as such claims become due or shall receive such other treatment as satisfies the requirements of section 1124 of the Bankruptcy Code. | Unimpaired | Presumed to Accept |
| 3. | QKD Note Claims | On the Effective Date, or as soon a reasonably practicable thereafter, each Holder of an Allowed QKD Note Claim shall have its Claim Reinstated. | Unimpaired | Presumed to Accept |

| Class | Claim or Interest | Treatment | Status | Voting Rights |
|---|---|---|---|---|
| 4. | Nussdorf Trust Notes Claims | On the Effective Date, or as soon a reasonably practicable thereafter, each Holder of an Allowed Nussdorf Trust Notes Claim shall have its Claim Reinstated. | Unimpaired | Presumed to Accept |
| 5. | 2004 Note Claims | On the Effective Date, or as soon a reasonably practicable thereafter, each Holder of an Allowed 2004 Note Claim shall have its Claim Reinstated. | Unimpaired | Presumed to Accept |
| 6. | General Unsecured Claims | All general unsecured claims shall be reinstated or paid in full in cash in the allowed amount of the claim or in the ordinary course as such claims become due or receive such other treatment as satisfies the requirements of section 1124 of the Bankruptcy Code. | Unimpaired | Presumed to Accept |
| 7. | Intercompany Claims | On the Effective Date, all Allowed Intercompany Claims held by the Debtors between and among the Debtors and/or any Affiliates of the Debtors shall, at the election of the Debtors or the Reorganized Debtors, as applicable, be either (i) Reinstated, or (ii) released, waived, and discharged. | Unimpaired | Presumed to Accept |
| 8. | Intercompany Interests | On the Effective Date, Allowed Intercompany Interests shall be Reinstated and rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code. | Unimpaired | Presumed to Accept |

| Class | Claim or Interest | Treatment | Status | Voting Rights |
|-------|-------------------|-----------|--------|---------------|
| 9. | Interests in Perfumania | On the Effective Date, all Interests in Perfumania shall be cancelled without further action by the Debtors or Reorganized Debtors and the obligations of the Debtors and Reorganized Debtors thereunder shall be discharged. Holders of Interests in Perfumania shall receive no property under the Plan on account of such Interests. | Impaired | Deemed to Reject |
| 10. | Subordinated 510(b) Claims | Holders of Subordinated 510(b) Claims shall not receive or retain any property under the Plan on account of such Subordinated 510(b) Claims and the obligations of the Debtors and Reorganized Debtors on account of Subordinated 510(b) Claims shall be discharged. | Impaired | Deemed to Reject |

**In addition, the Plan contains the release and injunction provisions set forth on <u>Exhibit 2</u> hereto.**

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Counterparties to Executory Contracts and Unexpired Leases with the Debtors should review **Article VII** of the Plan, set forth in **Exhibit 3** hereto.

**Assumption**: In general, except as listed on the Schedule of Executory Contracts and Unexpired Leases or as otherwise provided in the Plan or other documents entered into in connection with the Plan, as of the Effective Date, the Debtors shall be deemed to have assumed each Executory Contract and Unexpired Lease to which it is a party. Entry of the Confirmation Order by the Bankruptcy Court will constitute approval of such assumption. **Article 7.3** of the Plan provides that any counterparty to an Executory Contract or Unexpired Lease that wishes to object to such assumption must file and serve an objection thereto so that it is actually received by the Debtors at least seven (7) days prior to the Confirmation Hearing. Any such counterparty that fails to object timely to the proposed assumption will be deemed to have assented and will be deemed to have forever released and waived any objection to the proposed assumption other than with respect to any alleged Cure amount, which may be asserted at any time, subject to the other terms and conditions of the Plan and any order of the Bankruptcy Court.

**Rejection**: Contemporaneously with the Plan, the Debtors filed a Rejection Motion including a Schedule of Rejected Executory Contracts and Unexpired Leases. The Debtors will also file the Schedule of Rejected Executory Contracts and Unexpired Leases, including any amendments or modifications thereto, with the Plan Supplement. The Debtors will continue to perform their respective obligations under any rejected Unexpired Lease through the effective date of such rejection. The Schedule of Rejected Executory Contracts and Unexpired Leases sets forth the amount of Rejection Damages Claims related to each Executory Contract or Unexpired Lease being rejected. If a counterparty to an Executory Contract or Unexpired Lease does not dispute the Scheduled amount of its Rejection Damages Claim, such party is not required to file a proof of Claim. If a counterparty to an Executory Contract or Unexpired Lease disputes the Scheduled amount of its Rejection Damages Claim, or believes it has a Rejection Damages Claim that has not been Scheduled, such counterparty must file a proof of Claim asserting what the counterparty believes is the correct Rejection Damages Claim with the Claims and Administrative Agent within the latest to occur of: (1) 30 days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection or (2) 30 days after the effective date of such rejection set forth in the Schedule of Rejected Executory Contracts or Unexpired Leases (the **"Rejection Bar Date"**).

Counterparties should carefully review the Plan in its entirety, including **Article VII** thereof, as this summary is expressly qualified by the terms of the Plan.

## FILING CLAIMS AGAINST THE DEBTORS

The Bankruptcy Court has not established a deadline for filing proofs of claim at the present time, and the Plan, as currently proposed, does not require that creditors file proofs of

claim to receive the treatment specified under the Plan.  Should the Bankruptcy Court establish a claims bar deadline, you will receiver further notice at such time.   As a result, although creditors may, they are not requested to, file claims at this time.  Should the Bankruptcy Court establish a claims bar deadline, separate notice of the deadlines to file proofs of claim and a proof of claim form will be provided to the Debtors' known creditors.   Should a creditor desire to file a proof of claim at this time, proof of claim forms are available from the Bankruptcy Court's website at www.deb.uscourts.gov.   Also, Epiq is the claims agent in these Chapter 11 Cases and you can obtain a proof of claim form through Epiq's website, http://dm.epiq11.com/perfumania, by contacting Epiq, (888) 457-6672  or +1 (503) 597-7716 (international callers), or by contacting Epiq at epiqteamgreen@epiqsystems.com  Proofs of claim should be filed with Epiq by following the instructions available on Epiq's website or by contacting Epiq at the number set forth above.

If you have any questions about the status of your claim(s) and/or interest(s), you should contact [the Perfumania Call Center], (888) 457-6672  or +1 (503) 597-7716 (international callers).

Dated: Wilmington, Delaware
      August __, 2017

                      SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

                      _____

                      Anthony W. Clark (I.D. No. 2051)
                      One Rodney Square
                      P.O. Box 636
                      Wilmington, Delaware 19899-0636
                      Telephone: (302) 651-3000
                      Fax: (302) 651-3001

                      - and -

                      J. Gregory Milmoe
                      Raquelle L. Kaye
                      500 Boylston Street
                      Boston, Massachusetts 02116
                      Telephone: (617) 573-4800
                      Fax: (617) 573-4822

                      - and -

                      Lisa Laukitis
                      Four Times Square
                      New York, New York 10036-6522
                      Telephone: (212) 735-3000
                      Fax: (212) 735-2000

                      *Proposed Counsel for Debtors and Debtors in Possession*

**EXHIBIT 1**

| Debtor | Address | Case No. | Tax I.D. No. |
|---|---|---|---|
| Perfumania Holdings, Inc. | 35 Sawgrass Drive, Suite 2, Bellport, New York 11713 | 17- | 7964 |
| Perfumania, Inc. | 35 Sawgrass Drive, Suite 2, Bellport, New York 11713 | 17- | 6340 |
| Magnifique Parfumes and Cosmetics, Inc. | 35 Sawgrass Drive, Suite 2, Bellport, New York 11713 | 17- | 6420 |
| Ten Kesef II, Inc. | 35 Sawgrass Drive, Suite 2, Bellport, New York 11713 | 17- | 1253 |
| Perfumania.com, Inc. | 35 Sawgrass Drive, Suite 2, Bellport, New York 11713 | 17- | 4688 |
| Model Reorg Acquisition, LLC | 35 Sawgrass Drive, Suite 2, Bellport, New York 11713 | 17- | 0318 |
| Northern Group, Inc. | 35 Sawgrass Drive, Suite 2, Bellport, New York 11713 | 17- | 3226 |
| Perfumania Puerto Rico, Inc. | 35 Sawgrass Drive, Suite 2, Bellport, New York 11713 | 17- | 6787 |
| Quality King Fragrance, Inc. | 35 Sawgrass Drive, Suite 2, Bellport, New York 11713 | 17- | 4939 |
| Scents of Worth, Inc. | 35 Sawgrass Drive, Suite 2, Bellport, New York 11713 | 17- | 1732 |
| Jacavi, LLC | 35 Sawgrass Drive, Suite 2, Bellport, New York 11713 | 17- | 6863 |
| Distribution Concepts, LLC | 35 Sawgrass Drive, Suite 2, Bellport, New York 11713 | 17- | 8845 |
| Flowing Velvet, Inc. | 35 Sawgrass Drive, Suite 2, Bellport, New York 11713 | 17- | 7294 |
| Aladdin Fragrances, Inc. | 35 Sawgrass Drive, Suite 2, Bellport, New York 11713 | 17- | 4338 |

| | | | |
|---|---|---|---|
| Niche Marketing Group, Inc. | 35 Sawgrass Drive, Suite 2, Bellport, New York 11713 | 17- | 1943 |
| Northern Brands, Inc. | 35 Sawgrass Drive, Suite 2, Bellport, New York 11713 | 17- | 7186 |
| Northern Amenities, Ltd. | 35 Sawgrass Drive, Suite 2, Bellport, New York 11713 | 17- | 5387 |
| Global Duty Free Supply, Inc. | 35 Sawgrass Drive, Suite 2, Bellport, New York 11713 | 17- | 2686 |
| Perfumers Art, Inc. | 35 Sawgrass Drive, Suite 2, Bellport, New York 11713 | 17- | 6616 |

## EXHIBIT 2

## PLAN RELEASES

Article 9.4 of the Plan, entitled "Releases by Debtor" provides:

**Pursuant to section 1123(b) of the Bankruptcy Code for good and valuable consideration, including (i) the service of the Released Parties to facilitate the expeditious reorganization of the Debtors and the implementation of the restructuring contemplated by the Plan, (ii) the contribution of NewHoldCo Equity Infusion to the Reorganized Debtors, (iii) the services of the Debtors', the Non-Debtor Affiliates, and Such Entities' former officers, directors, managers and advisors in facilitating the expeditious implementation of the restructuring contemplated hereby, on and after the Effective Date (such that the Reorganized Debtors will not receive any Claim or Cause of Action released hereunder), the Debtors and their Estates, and the Reorganized Debtors, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, waived and discharged the Released Parties from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, their Estates and their Affiliates, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, contingent or non-contingent, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, fraud, contract, violations of federal or state securities laws or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or in any way relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring, the Chapter 11 Cases, the DIP Facility, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, provided under any applicable law, rule, or regulation, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual agreements between any Debtor, Reorganized Debtor, Estate or Affiliate and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the DIP Credit Agreement, Plan, the Disclosure Statement, the Plan Supplement, the Exit Revolver Facility Credit Agreement, any other Plan Transaction Document, or related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date of the Plan, other than Claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct or gross negligence.  Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.  For the avoidance of doubt, nothing in this paragraph shall in any way affect the operation of <u>Article 9.2</u> of the Plan, pursuant to section 1141(d) of the Bankruptcy Code.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor releases pursuant to this <u>Article 9.4</u>,**

**which includes by reference each of the related provisions and definitions contained herein, and further shall constitute the Bankruptcy Court's finding that such Debtor releases are (i) in exchange for the good and valuable consideration provided by the Released Parties, (ii) a good faith settlement and compromise of the claims released by such Debtor releases, (iii) in the best interests of the Debtors and all holders of Claims and Interests, (iv) fair, equitable and reasonable, (v) given and made after due notice and opportunity for hearing, and (vi) a bar to any of the Debtors or the Reorganized Debtors asserting any Claim or Cause of Action released pursuant to such Debtor releases.**

Article 9.5 of the Plan, entitled "Releases by Releasing Stockholders" provides:

**As of the Effective Date, each of the Releasing Stockholders, in consideration for the Releasing Stockholder Consideration, and other contracts, instruments, releases, agreements or documents executed and delivered in connection with this Plan, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, waived and discharged the Released Parties from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims, purportedly asserted or assertable on behalf of the Debtors, the Reorganized Debtors, their Estates, and their Affiliates, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, contingent or non-contingent, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, fraud, contract, violations of federal or state securities laws or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or in any way relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring, the Chapter 11 Cases, the DIP Facility, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors provided under any applicable law, rule, or regulation, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual agreements between any Debtor, Reorganized Debtor, Estate or Affiliate and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the DIP Credit Agreement, the Plan, the Disclosure Statement, the Plan Supplement, the Exit Revolver Facility Credit Agreement, any other Plan Transaction Document, or related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date of the Plan.  Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or assumed by the Debtors.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Stockholder Release pursuant to this <u>Article 9.5</u>, which includes by reference each of the related provisions and definitions contained herein, and further shall constitute the Bankruptcy Court's finding that such of the releases by the Releasing Stockholders are (i) in exchange for the good and valuable consideration provided by the Released Parties, (ii) a good faith settlement and compromise of the claims**

released by the Releasing Stockholders, (iii) in the best interests of the Debtors and all holders of Claims and Interests, (iv) fair, equitable and reasonable, (v) given and made after due notice and opportunity for hearing, and (vi) a bar to any of the Releasing Stockholders asserting any Claim or Cause of Action released pursuant to such releases.

Article 9.7 of the Plan, entitled "Injunction" provides:

**EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN, THE PLAN SUPPLEMENT OR RELATED DOCUMENTS, OR FOR OBLIGATIONS ISSUED PURSUANT TO THE PLAN, ALL PERSONS WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE BEEN RELEASED PURSUANT TO ARTICLES 9.4 or 9.5, DISCHARGED PURSUANT TO ARTICLE 9.2, OR ARE SUBJECT TO EXCULPATION PURSUANT TO ARTICLE 9.6 ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS:   (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (2) ENFORCING, ATTACHING, COLLECTING OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST SUCH PERSONS ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (3) CREATING, PERFECTING OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH PERSONS OR THE PROPERTY OR ESTATES OF SUCH PERSONS ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; AND (4) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED, SETTLED OR DISCHARGED PURSUANT TO THE PLAN.**

**THE RIGHTS AFFORDED IN THE PLAN AND THE TREATMENT OF ALL CLAIMS AND INTERESTS HEREIN SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION OF ALL CLAIMS AND INTERESTS OF ANY NATURE WHATSOEVER, INCLUDING ANY INTEREST ACCRUED ON CLAIMS FROM AND AFTER THE PETITION DATE, AGAINST THE DEBTORS OR ANY OF THEIR ASSETS, PROPERTY OR ESTATES.   ON THE EFFECTIVE DATE, ALL SUCH CLAIMS AGAINST THE DEBTORS SHALL BE FULLY RELEASED AND DISCHARGED.**

**EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR HEREIN OR IN OBLIGATIONS ISSUED PURSUANT TO THE PLAN FROM AND AFTER THE EFFECTIVE DATE, ALL CLAIMS AGAINST THE DEBTORS SHALL BE FULLY RELEASED AND DISCHARGED, AND ALL INTERESTS SHALL BE CANCELLED, AND THE DEBTORS' LIABILITY WITH RESPECT THERETO SHALL BE EXTINGUISHED COMPLETELY, INCLUDING ANY LIABILITY OF THE KIND SPECIFIED UNDER SECTION 502(G) OF THE BANKRUPTCY CODE.   ALL PERSONS SHALL BE PRECLUDED FROM ASSERTING AGAINST THE DEBTORS, THE DEBTORS' ESTATES, THE REORGANIZED DEBTORS, EACH OF THEIR**

**RESPECTIVE SUCCESSORS AND ASSIGNS, AND EACH OF THEIR ASSETS AND PROPERTIES, ANY OTHER CLAIMS OR INTERESTS BASED UPON ANY DOCUMENTS, INSTRUMENTS OR ANY ACT OR OMISSION, TRANSACTION OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED BEFORE THE EFFECTIVE DATE.**

**EXHIBIT 3**

**ARTICLE VII**

**UNEXPIRED LEASES AND EXECUTORY CONTRACTS**

**7.1    Assumption and Rejection of Executory Contracts and Unexpired Leases.**

(a)    Except as otherwise provided herein, each Executory Contract and Unexpired Lease shall be deemed assumed pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless any such Executory Contract or Unexpired Lease: (1) is identified on the Schedule of Rejected Executory Contracts and Unexpired Leases; (2) was assumed or rejected previously by the Debtors; (3) expired or terminated pursuant to its own terms before the Effective Date; (4) is the subject of a motion to reject pending on the Confirmation Date; or (5) is the subject of a motion to reject an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such rejection is after the Effective Date.

(b)    Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the assumptions or rejections of such Executory Contracts or Unexpired Leases as set forth in the Plan, all pursuant to sections 365(a) and 1123 of the Bankruptcy Code. All assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date or the date set forth in the Schedule of Rejected Executory Contracts and Unexpired Leases. The Debtors will continue to perform their respective obligations under any rejected Unexpired Lease through the effective date of such rejection.

(c)    All Assumed Executory Contracts and Unexpired Leases shall remain in full force and effect for the benefit of the Reorganized Debtors, and be enforceable by the Reorganized Debtors in accordance with their terms, notwithstanding any provision in such assumed Executory Contract or Unexpired Lease that prohibits, restricts or conditions such assumption, assignment or transfer. Any provision in the assumed Executory Contracts and Unexpired Leases that purports to declare a breach or default based in whole or in part on commencement or continuance of these Chapter 11 Cases or any successor cases is hereby deemed unenforceable.  To the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan (including, without limitation, any "change of control" provision) restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the Reorganized Debtors' assumption of such Executory Contract or Unexpired Lease, then such provision will be deemed modified such that the transactions contemplated by the Plan will not entitle the non-debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.  Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the applicable contracting Reorganized Debtor in accordance with its terms, except as such terms may have been modified by such order or by applicable law.

(d)    Notwithstanding anything to the contrary in the Plan, the Debtors ,with the consent of New HoldCo (which consent shall not be unreasonably withheld),

or the Reorganized Debtors, as applicable, reserve the right to alter, amend, modify or supplement the Schedule of Rejected Executory Contracts and Unexpired Leases identified in the Plan Supplement at any time before the Confirmation Date.  After the Confirmation Date, the Reorganized Debtors shall have the right to terminate, amend or modify any intercompany contracts, leases or other agreements without approval of the Bankruptcy Court.

> **7.2     Claims Procedures Related to Rejection of Executory Contracts or Unexpired Leases.**

(a)     All Allowed Rejection Damages Claims shall be classified as General Unsecured Claims.

(b)     **Procedures for Rejection Damages Claim Holders that Agree with Scheduled Claim**.  Contemporaneously with the Plan, the Debtors filed a Rejection Motion including a Schedule of Rejected Executory Contracts and Unexpired Leases.  The Debtors will also file the Schedule of Rejected Executory Contracts and Unexpired Leases, including any amendments or modifications thereto, with the Plan Supplement. These schedules set forth the amount of Rejection Damages Claims related to each Executory Contract or Unexpired Lease being rejected.  If a counterparty to an Executory Contract or Unexpired Lease does not dispute the Scheduled amount of its Rejection Damages Claim, such party is not required to file a proof of Claim, and will be deemed to have an Allowed Rejection Damages Claim in the amount set forth on the Debtors' Schedule of Rejected Executory Contracts and Unexpired Leases at the expiration of the Rejection Bar Date.  Any holder that disputes the Scheduled amount of its Rejection Damages Claim is required to file a proof of Claim, pursuant to the procedures set forth in this 0.

(c)     **Procedures for Rejection Damages Claim Holders that Disagree with Scheduled Claim**.  If a counterparty to an Executory Contract or Unexpired Lease disputes the Scheduled amount of its Rejection Damages Claim, or believes it has a Rejection Damages Claim that has not been Scheduled, unless otherwise provided by a Bankruptcy Court order, such counterparty must file a proof of Claim asserting what the counterparty believes is the correct Rejection Damages Claim with the Claims and Administrative Agent within the latest to occur of: (1) 30 days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection or (2) 30 days after the effective date of such rejection set forth in the Schedule of Rejected Executory Contracts or Unexpired Leases (the "Rejection Bar Date").  **Any Entity that disputes the Scheduled amount of its Rejection Damages Claim is required to file a proof of Claim asserting a Rejection Damages Claim and failure to do so on or before the applicable Rejection Bar Date shall result in any Rejection Damages Claim in excess of the Scheduled amount being disallowed automatically and forever barred, estopped, and enjoined from assertion and any such Rejection Damages Claim in excess of the Scheduled amount shall not be enforceable against the Debtors or the Reorganized Debtors, without the need for any objection by the Reorganized Debtors or any further notice to or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding a proof of Claim to the contrary.  In addition, any Entity that believes it has a Rejection Damages Claim that has not been Scheduled is required to file a**

**proof of Claim asserting a Rejection Damages Claim and failure to do so on or before the applicable Rejection Bar Date shall result in any Rejection Damages Claim being disallowed automatically and forever barred, estopped, and enjoined from assertion and any such Rejection Damages Claim shall not be enforceable against the Debtors or the Reorganized Debtors, without the need for any objection by the Reorganized Debtors or any further notice to or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding a proof of Claim to the contrary.**

(d) **Time to File Objections**. Any objections to proofs of Claim asserting Rejection Damages Claims shall be filed on or before the Rejection Damages Claim Objection Deadline.

(e) **No Distributions Pending Allowance**. If an objection to a proof of Claim asserting a Rejection Damages Claim, or portion thereof, is filed on or before the Rejection Damages Claim Objection Deadline, no payment or distribution provided under the Plan shall be made on account of such Rejection Damages Claim, or portion thereof, unless and until such Disputed Rejection Damages Claim becomes an Allowed Claim, unless otherwise determined by the Reorganized Debtors. If an objection to a proof Claim asserting a Rejection Damages Claim is not filed by the Rejection Damages Claim Objection Deadline, such Claim shall become an Allowed Rejection Damages Claim in the amount asserted in such proof of Claim upon the expiration of the Rejection Damages Claim Objection Deadline.

**7.3    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.**

(a) Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan will be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash as and when due in the ordinary course or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.

(b) Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption must be filed, served, and actually received by the Debtors at least seven (7) days prior to the Confirmation Hearing. Any counterparty to an Executory Contract and Unexpired Lease that fails to object timely to the proposed assumption will be deemed to have assented and will be deemed to have forever released and waived any objection to the proposed assumption other than with respect to any alleged Cure amount, which may be asserted at any time. In the event of a dispute regarding (1) the amount of any payments to Cure a default, (2) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed or (3) any other matter pertaining to assumption, the Cure payments required by section 365(b)(1) of the Bankruptcy Code will be made following the entry of a Final Order or orders resolving the dispute and approving the assumption. If an objection to Cure is sustained by the Bankruptcy Court, the Debtors or Reorganized Debtors, as

applicable, in their sole option, may elect to reject such Executory Contract or Unexpired Lease in lieu of assuming it.

(c)    Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the effective date of the assumption.

**7.4    Insurance Policies**.  Notwithstanding anything herein to the contrary, as of the Effective Date, the Debtors shall assume (and assign to the Reorganized Debtors if necessary to continue the Insurance Policies in full force) all of the Insurance Policies pursuant to section 365(a) of the Bankruptcy Code and may provide an extended discovery period for the D&O Liability Insurance Policies.  Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtors' foregoing assumption of each of the Insurance Policies.

**7.5    Modifications, Amendments, Supplements, Restatements, or Other Agreements.**  Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated pursuant hereunder.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

**7.6    Contracts and Leases Entered into After the Petition Date**.  Contracts and leases entered into after the Petition Date by the Debtors, and any Executory Contracts and Unexpired Leases assumed by the Debtors, may be performed by the Reorganized Debtors in the ordinary course of business and in accordance with the terms thereof.

**7.7    General Reservation of Rights**.  Neither the exclusion nor inclusion of any contract or lease on the Schedule of Rejected Executory Contracts and Unexpired Leases, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Reorganized Debtors, or any of their Affiliates, has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Reorganized Debtors, as applicable, shall have 45 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.